**WESTERN BROADCASTING COMPANY, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Santa Monica Broadcasting, Inc., Intervenor.**

**No. 81–1178.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 25, 1982.

Decided March 19, 1982.

---

22. *See, e.g.*, J.A. 44, 74, 94, 129.

23. D.Ct.Op. at 1092.

24. *Id.*

25. *E.g.*, J.A. 73. *See also* J.A. 79, 95–98.

26. *See* J.A. 214–24.

John Michael Pelkey, Washington, D. C., with whom Michael H. Bader and William J. Potts, Washington, D. C., were on brief for appellant.

Nancy Elizabeth Stanley, Atty., F. C. C., Washington, D. C., with whom Daniel M. Armstrong, Associate Gen. Counsel, C. Grey Pash, Jr., and Marjorie S. Reed, Attys., and Stephen A. Sharp, Gen. Counsel, F. C. C., Washington, D. C., were on brief for appellee.

Ben C. Fisher and John Q. Hearne, Washington, D. C., entered appearances for intervenor.

Before ROBINSON, Chief Judge, EDWARDS, Circuit Judge, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

46

HARRY T. EDWARDS, Circuit Judge:

This appeal has been brought by Western Broadcasting Company, licensee of class A FM radio station KOCM in Newport Beach, California,[1] pursuant to Section 402(b) of the Communications Act of 1934, as amended, 47 U.S.C. § 402(b) (1976) (hereafter "the Act"). Appellant challenges an Order of the Federal Communications Commission (hereafter "FCC" or "Commission"), granting the application of intervenor, Santa Monica Broadcasting, Inc., for a construction permit to change the transmitter location of class A FM radio station KSRF in Santa Monica, California.[2]

On January 30, 1979, "KSRF ... applied for a construction permit to change its transmitter location with an accompanying decrease in its effective radiated power and increase in antenna height above average terrain." *Santa Monica Broadcasting, Inc.,* 79 F.C.C.2d 949 (1980). On May 30, 1979, appellant KOCM filed a Petition to Deny the KSRF application on the ground that the proposed new KSRF mountainside transmitter site would result in " 'ruinous' interference to the KOCM signal." Joint Appendix (J.A.) 9.[3] Following receipt of further written pleadings from both appellant and intervenor, but without a hearing on the issues in dispute, the Commission approved the KSRF application for a construction permit and rejected the KOCM Petition to Deny.[4] In its Memorandum Opinion, the Commission first observed

"that KOCM ... erred in its engineering analysis by substantially underestimating the degree of present interference and overestimating the degree of proposed interference." 79 F.C.C.2d at 951. The Commission therefore ruled that the grant of the KSRF application would not constitute a modification of the KOCM license because "KSRF's proposal will involve no additional area of interference with KOCM's 1 mV/m contour." *Id.* The Commission then concluded that "KSRF's compliance with Section 73.213 [47 C.F.R. § 73.213 (1980)] mandates that KOCM's objection on contour-interference grounds is inapplicable." *Id.* Finally, the Commission rejected, as "of no consequence," *id.* at 952, KOCM's contention that the proposed modification would alter KSRF's status as a small class A station primarily serving Santa Monica.

On September 16, 1980, KOCM filed a Petition for Reconsideration of the Commission's grant of KSRF's application. J.A. 116. This petition was denied by the FCC on January 21, 1981, again without a hearing, on the ground "that petitioner [had] failed to raise a substantial and material question of fact which would require a hearing." J.A. 136.

On the record before us, we find that appellant's claim, alleging that the grant of the KSRF application may create objectionable interference, raises a legally cognizable issue under Section 316 of the Act.[5] Ac-

---

1. Western Broadcasting is the present licensee of station KOCM. At the time when these proceedings were initiated before the FCC, KOCM was owned by Hutton Broadcasting, Inc. By Order of this court, dated May 21, 1981, pursuant to a Motion for Leave to Substitute Parties, Western Broadcasting was substituted for Hutton Broadcasting as appellant in this case.

2. Intervenor, Santa Monica Broadcasting, Inc., is the licensee of station KSRF.

3. Both KSRF and KOCM operate on Channel 176A (103.2 MHz).

4. Appellant has also appealed the Commission Orders rejecting the Petition to Deny and a subsequently filed Petition for Reconsideration.

5. Section 316, 47 U.S.C. § 316 (1976), provides that:

(a) Any station license or construction permit may be modified by the Commission either for a limited time or for the duration of the term thereof, if in the judgment of the Commission such action will promote the public interest, convenience, and necessity, or the provisions of this chapter or of any treaty ratified by the United States will be more fully complied with. No such order of modification shall become final until the holder of the license or permit shall have been notified in writing of the proposed action and the grounds and reasons therefor, and shall have been given reasonable opportunity, in no event less than thirty days, to show cause by public hearing, if requested, why such order of modification should not issue: *Provided,* That where safety of life or property is involved, the Commission may by order provide for a shorter period of notice.

cordingly, we hold that appellant was entitled to notice and an opportunity to show cause in a public hearing why the proposed order of modification should not issue. We therefore reverse in part the Orders of the FCC and remand this case to the agency for further proceedings consistent with this opinion.

## I. BACKGROUND

KOCM and KSRF are commercial FM radio broadcast stations operating on the same frequency. KOCM's city of license is Newport Beach and its present areas of coverage include Newport Beach and some surrounding locales in Orange County, California. KSRF's city of license is Santa Monica and its present areas of coverage include Santa Monica, Beverly Hills and sections of the Westside of Los Angeles, California. The stations have existed as "co-channel" operations on Channel 167A (103.1 MHz) since as early as 1960.

Under usual Commission rules, it is required that a minimum of 65 miles separate co-channel class A FM stations such as KOCM and KSRF. *See Revision of FM Broadcast Rules, First Report and Order* (Docket No. 14185), 40 F.C.C. 662, 689 (1962); *see also* 47 C.F.R. § 73.208 (1980). However, for a number of years now, KOCM and KSRF have operated as "short-spaced" stations, separated only by a distance of approximately 41.5 miles. This "short-spacing" is permitted pursuant to an extensive Commission rulemaking in Docket 14185,[6] in which rules were established to allow co-channel FM stations to operate at spacings below the 65-mile minimum if the stations were already licensed in a short-spaced condition as of November 16, 1964. 47 C.F.R. § 73.213 (1981).[7]

(b) In any case where a hearing is conducted pursuant to the provisions of this section, both the burden of proceeding with the introduction of evidence and the burden of proof shall be upon the Commission.

6. *See generally Revision of FM Broadcast Rules, First Report and Order*, 40 F.C.C. 662 (1962); *Second Report, Memorandum Opinion and Order*, 40 F.C.C. 720 (1962); *Third Report, Memorandum Opinion and Order*, 40 F.C.C. 747 (1963); *Fourth Report and Order*, 40 F.C.C. 868 (1964).

7. The Docket 14185 proceeding was "instituted for the purpose of determining what changes in the FM rules and technical standards [were] necessary for the optimum development of this broadcast service, and how the expansion of the service [could] be achieved with the least amount of delay and burden on the Commission, applicants, and other parties." 40 F.C.2d at 663. In its effort to implement a series of fixed rules governing applications for licenses or for disposal of applications and proposals, the Commission adopted a table of assignments of specific FM radio channels to specific communities, based on minimum mileage separations between stations of particular classes and frequencies. These mileage separations essentially were based on transmitter power and antenna height. *See First Report and Order, supra* note 6, 40 F.C.C. at 682–89. The current table of assignments is set out in Section 73.-202 of the Commission's Rules, 47 C.F.R. § 73.202 (1980).

One of the proposals rejected by the Commission in the Docket 14185 proceeding was an approach which would have permitted *assign-ments* based on protecting existing stations to their 1.0 mV/m contour. A field strength contour depicts on a map the station's predicted coverage area at a given signal strength. For FM stations, the two significant contours are the 3.16 mV/m (70 dBu) contour, which the Commission requires a station to place over its city of license (47 C.F.R. § 73.315(a) (1980)), and the 1.0 mV/m (60 dBu) contour, which is a lower signal strength covering a larger area commonly referred to as the primary service area and which the Commission has described as required for service to city or business, as opposed to rural, areas. *See First Report and Order, supra* note 6, 40 F.C.C. at 682–83; 47 C.F.R. § 73.311 (1980). Prior to adoption of the new allocation plan in Docket 14185 in 1962, the Commission's assignment scheme had protected existing stations from interference within their 1.0 mV/m contour by newly assigned stations.

Although the Commission was unwilling to adopt any "plan based only on a 'protected contour' concept," *First Report and Order, supra* note 6, 40 F.C.C. at 674, it nevertheless made clear that it was leaving open the question of whether a station could object on contour-interfering grounds. On this point, the Commission stated:

[I]t appears that only in relatively few cases would interference be caused within an existing station's 1 mv/m contour. In the Third Further Notice we tentatively discussed the rights of FM licensees to object to applications for increased facilities by short-spaced stations on the grounds that such proposals would cause interference within their 1 mv/m contours. (See FN 5, Third Further

At the time when KSRF applied for a construction permit to change the location of its transmitter, the station was licensed to operate with 1,835 watts of power, with an antenna site at 95 feet below the average terrain. By contrast, KOCM was licensed to operate with 2,000 watts of power, with an antenna site at something over 300 feet above the average terrain. In its construction permit application, KSRF proposed to move its transmitter to a site 44 miles away from KOCM, but with the new antenna at 575.5 feet above average terrain.[8] After KOCM objected to the KSRF application, KSRF amended its proposal to include a directional antenna designed to reduce its power in KOCM's direction from 562 to 360 watts.[9] As noted by the Commission, KSRF stated in its application "that the primary reason behind its proposal was the deterioration of its signal to the city of license, Santa Monica, caused by interference from high-rise construction in the city." 79 F.C.C.2d at 950.

Appellant maintains that KOCM and KSRF have been able to "co-exist" only because the two stations have "utilized antennas which were at relatively low heights." Appellant's brief at 2. KOCM further alleges that destructive interference will result if the KSRF application is approved because

> the new site would provide line of sight conditions between the KSRF antenna and Newport Beach since the KSRF antenna would be peering over the terrain obstruction which had previously protected KOCM's service area from interference . . . .
>
> . . . .
>
> KOCM and KSRF are closer together than any other two stations in the Southern California Area. As a result, the

sheer distance which protects other co-channel stations from interference can provide no relief to KOCM. Consequently, KOCM must rely upon intervening terrain or the use of low power by KSRF to protect it from interference. Because there are no intervening terrain features to block KSRF's signal, operation from KSRF's proposed site would cause interference to KOCM over a large portion of KOCM's service area.

Appellant's brief at 4, 6 (footnotes omitted). Appellant also challenges the adequacy of the proposed directional antenna, claiming that it would "not provide for adequate protection of the service of KOCM (FM), either as an absolute or by comparison with the present conditions." *Engineering Report of Hatfield and Dawson*, accompanying KOCM's Reply to KSRF's Opposition to Petition to Deny, *reprinted in* J.A. at 88, 93.

In its written pleadings to the Commission, KSRF contended that (1) "KSRF's proposed site is . . . in full compliance with the Commission's rules [47 C.F.R. § 73.213 (1980)] for site changes to short spaced FM stations," J.A. at 102; (2) "KOCM and KSRF have successfully co-existed for years with a much higher level of mutual interference than indicated in the engineering exhibit to KOCM's petition," J.A. at 39; and (3) "[u]nder KSRF's amended proposal, no increase in interference will be caused to KOCM from KSRF's new site," J.A. at 44.

The Commission, in ruling against KOCM, acknowledged that the fact that the KSRF application complied with the standards set forth in section 73.213 of the Commission's rules, 47 C.F.R. § 73.213 (1980), was not dispositive of KOCM's claim. Rather, the Commission noted that "the interference issue [must] be examined on a

---

Notice). On reflection, we have decided not to attempt to resolve the rights of such objections at this time. They instead will be resolved if presented in a specific case. *Fourth Report and Order, supra* note 6, 40 F.C.C. at 884. *See also Santa Monica Broadcasting, Inc.*, 79 F.C.C.2d at 951 ("the interference issue [will] be examined on a case-by-case basis in future situations of short-spaced stations under Section 73.213").

8. KSRF also proposed to reduce its effective radiated power to 562 watts, with an omnidirectional antenna (*i.e.*, providing equal power in all directions). Intervenor's brief at 7–8.

9. The directional antenna also would allow higher power (up to 870 watts) in directions other than towards KOCM. Intervenor's brief at 9.

case-by-case basis in . . . situations of short-spaced stations under Section 73.213." 79 F.C.C.2d at 951. In this case, however, the Commission could find no "legally protectable" interest because, according to the Commission, "KSRF's proposal will involve no additional area of interference within KOCM's 1 mV/m contour. . . ." *Id.*

The principal question facing this court is whether the Commission could properly dispose of the KOCM claims without an evidentiary hearing. We hold that, in the light of the clear statutory mandate found in Section 316 of the Act, *see* note 5 *supra*, and because of the numerous highly technical and seriously contested factual issues in this case, the Commission erred in summarily rejecting KOCM's claims of interference without first conducting an evidentiary hearing on the issues in dispute.

## II. THE HEARING REQUIREMENT UNDER SECTION 316 OF THE COMMUNICATIONS ACT

### A. The Applicability of Section 316

Section 316 of the Communications Act provides that "any station license . . . may be modified by the Commission . . . if in the judgment of the Commission such action will promote the public interest, convenience, and necessity." *See* note 5 *supra*. However, "no such . . . modification shall become final until the holder of the license . . . shall have been *notified in writing* of the proposed action and the grounds and reasons therefor, and shall have been given reasonable opportunity . . . to show cause by *public hearing*, if requested, why such order of modification should not issue." *Id.* (emphasis added). In this case, appellant has sought a hearing under section 316 on the claim that the Commission's grant of the KSRF application will result in increased interference to KOCM causing an indirect modification of the appellant's license.

As justifications for the denial of the requested hearing, the Commission offers a two-fold response: First, in the argument before this court, the Commission urged, for the first time, that no hearing was required because the regulations upon which the modification would be based (47 C.F.R. § 73.213 (1980)) became effective prior to KOCM's current three-year term of license. In other words, the Commission now contends that, even assuming that there will be increased interference attributable to a change in the KSRF antenna site, the action of the Commission cannot, as a matter of law, be viewed as a "modification" under section 316. Second, in its Memorandum Opinion and Order denying appellant's request for reconsideration, the Commission ruled that appellant "has failed to raise a substantial and material question of fact which would require a hearing." J.A. at 136. Thus, according to the Commission, even if appellant's claim refers to a legally cognizable "modification" under section 316, the claim nevertheless may be dismissed pursuant to a summary disposition without a hearing. We reject both of these contentions for the reasons set forth below.

### 1. The Meaning of a "Modification" Under Section 316

■ In its brief to this court, appellee acknowledges that

[t]he Communications Act explicitly permits the Commission to modify any station license, but only after notification to the licensee and an opportunity for the licensee to show cause in a public hearing why the modification should not be ordered. 47 U.S.C. 316. It has long been established that this provision covers indirect as well as direct modifications of licenses. . . . Indirect modifications include factual circumstances where it is alleged that a new grant may create objectionable electrical interference to an existing licensee and the existing licensee is protected by Commission policy or regulation from such interference.

Appellee's brief at 9–10 (citations omitted). We accept this as an accurate statement of the controlling legal principles in this case. Indeed, it is for precisely the reasons outlined by appellee that we hold that the Commission erred in denying appellant a hearing under section 316.

Despite the acknowledgement that a hearing is required under section 316 "*where it is alleged* that a new grant *may* create objectionable electrical interference to an existing licensee," the Commission argues that appellant has no legally protectable interest because the "grant of KSRF's application was based on its consistency with Section 73.213 of the Rules and the *Fourth Report and Order* [*see* notes 6 and 7 *supra*], adopted long before KOCM's current license term." Appellee's brief at 10. In short, appellee contends that "[t]he basis for KOCM's argument that it was entitled to a hearing—increased objectionable interference within its 1.0 mV/m contour—was rejected by the Commission as a material consideration in the *Fourth Report and Order*." *Id.* at 10–11. Thus, according to the Commission, appellant's claim cannot be viewed as a "modification" under section 316 because, following the conclusion of the rulemaking proceeding in Docket 14185 in 1964, *see* note 7 *supra*, "FM licensees were no longer entitled to protection based on their 1.0 mV/m signal contours. They were thereafter protected from interference only to the extent provided by the minimum mileage separations and related rules." *Id.* at 11.

As has already been suggested above, *see* note 7 *supra*, the Commission's arguments on this point must fail. As noted by appellant:

> The Commission premises this argument on the *Fourth Report and Order* in Docket No. 14185, promulgating Section 73.213 of the Commission's rules (47 C.F.R. 73.213). However, the provision in that order upon which the Commission relies related only to claims of interference occurring as a result of the change in the rules at that time, not to additional interference, and thus, hearings on subsequent modifications which might result from future changes in another station's license are not precluded by that Order. KOCM is not arguing that interference caused by KSRF's existing antenna causes such a modification of its license as to require the holding of a hearing pursuant to Section 316. Rather, KOCM is assert-

ing its rights with respect to the additional interference which would result from the change in KSRF's antenna site.

Appellant's reply brief at 3–4 (footnote omitted). *See also* discussion at note 7 *supra*.

The appellee's position that appellant's claim cannot be viewed as a "modification" under section 316 is wrong as a matter of law and patently inconsistent with the Commission's own decision here under review. In ruling against appellant, the Commission made it plain that the fact that KSRF's application complied with the standards set forth in 47 C.F.R. § 73.213 was not dispositive of this case. Furthermore, the Commission never suggested, either in its initial decision or in the decision following the request for reconsideration, that appellant's claim fell outside of the scope of section 316. Rather, the opinion of the Commission first noted that "the interference issue [must] be examined on a case-by-case basis . . . in situations of short-spaced stations under Section 73.213," and then found that appellant had no "legally protectable" interest in this case because "KSRF's proposal will involve no additional area of interference within KOCM's 1 mV/m contour." 79 F.C.C.2d at 951. These rulings by the FCC surely do not support the contention advanced by appellee on this appeal, *i.e.*, that appellant's claim does not, *as a matter of law*, raise an issue that is cognizable under section 316.

On the record before us, we hold that appellant's claim, alleging that the grant of the KSRF application may create objectionable interference, raises a legally cognizable issue under section 316.

## 2. *The Inapplicability of the "Substantial and Material Question of Fact" Test*

The second reason given by the Commission to justify the denial of the requested hearing under section 316 was that appellant had "failed to raise a substantial and material question of fact which would require a hearing." J.A. at 136. We reject this justification for two reasons: (1) it is

premised on an erroneous legal standard and (2) it finds no substantial support in the record in this case.

▮ In ruling that no hearing was required because appellant failed in its written pleadings to raise a "substantial and material question of fact," the Commission has employed a legal test that is not authorized by section 316. What the Commission has done is to limit appellant's rights under section 316 by resort to a standard imported from section 309(d)(2) of the Communications Act, 47 U.S.C. § 309(d)(2) (1976). This latter section states, in part, that, with respect to "a petition to deny any application,"

> [i]f the Commission finds on the basis of the application, the pleadings filed, or other matters which it may officially notice that there are no substantial and material questions of fact and that a grant of the application would be consistent with subsection (a) of this section, it shall make the grant, deny the petition, and issue a concise statement of the reasons for denying the petition, which statement shall dispose of all substantial issues raised by the petition.

No such provision appears in section 316. See note 5 supra. Thus, while the Commission may properly dispose of a "petition to deny" without a hearing under section 309, no comparable authority exists with respect to claims raising legally cognizable issues under section 316.

It is undisputed that many claims arising under section 316 also may be covered by section 309. However, the former section is more narrow in scope, limited to cases involving only "modifications" of station licenses or construction permits. In this limited category of cases, Congress has made it

plain that affected licensees "shall," upon request, have an opportunity to show cause by *public hearing* why an order of modification should not issue. To follow the test enunciated by the Commission in this case, allowing for summary disposition whenever it appears that there are no substantial and material questions of fact, would be to nullify the clear mandate of section 316. This we will not do.

▮ Furthermore, on the facts of this case, we do not understand how the Commission could conclude that there were no substantial questions of fact to be resolved. In support of its petition, appellant submitted engineering statements prepared by the firm of Hatfield and Dawson. See J.A. at 19, 88. Intervenor then offered engineering reports prepared by Jules Cohen & Associates to dispute appellant's claim of additional interference attributable to the proposed new antenna site. See J.A. at 48, 105. The Commission, relying on the methodology set forth in 47 C.F.R. § 73.313 (1980), stated that it "agree[d] with KSRF's predictions." 79 F.C.C.2d at 951. The Commission also added that it was "unable to determine the reasons for KOCM's [engineering] miscalculations." Id.[10]

There are at least two obvious flaws in the Commission's analysis. First, the Commission's reliance on the calculation methodology specified in 47 C.F.R. § 73.313, to the exclusion of appellant's engineering studies, was misplaced. By its terms, section 73.313 indicates that the calculation methodology set forth therein is to be used for "predictions of coverage . . . without regard to interference" and "only for the same purposes as relate to the use of field strength contours as specified in § 73.-311."[11] Appellant's engineering reports ex-

---

10. Similarly, in the Memorandum Opinion and Order denying appellant's request for reconsideration, the Commission stated:

> Upon re-examination of the November 5 engineering data, we continue to be puzzled by KOCM's interference claim. We are unable to determine how KOCM reached its conclusion. By utilizing the accepted methods of Section 73.313 of our Rules for determining

> interference, we stand by our original conclusion that no increased interference will occur. J.A. at 136.

11. Section 73.311 of the Commission's Rules, 47 C.F.R. § 73.311 (1980), states:

> (a) Applications for FM broadcast authorizations must show two field strength contours. These are the 70 dBu (3.16 mV/m) and the 60 dBu (1 mV/m) contours. These contours indicate only the approximate ex-

plained that although the section 73.313 methodology is relatively easy to apply, it makes no allowances for differences in propagation resulting from variations in terrain, and it fails to take into account unique conditions such as the line of sight ("free space") conditions in the present case. Based on their own method of calculation, appellant's engineers concluded that additional interference would in fact occur if KSRF were permitted to move its transmitter.

Second, in relying solely on the methodology set forth in section 73.313, the Commission not surprisingly concluded that it was "*unable* to determine the reasons for KOCM's [alleged engineering] miscalculations." 79 F.C.C.2d at 951 (emphasis added). The Commission obviously understood that "KOCM [was claiming] that a new method of predicting potential interference must be utilized in this case;" the Commission nevertheless concluded that no hearing was required because appellant had failed "to adequately document this different method." J.A. at 136. It is difficult to comprehend the Commission's reasoning. One of the purposes of the hearing requirement under section 316 would be to permit a party to explain and verify engineering calculations with respect to claims of alleged modifications. It is no answer for the Commission, in the face of highly disputed factual questions, to summarily dismiss a claim that otherwise raises a legally cognizable issue under section 316 merely because the Commission remains "puzzled" by the claim. *See* note 10 *supra.*

If anything, this case highlights rather well the reasons why a hearing should have

been held: the contesting parties have relied on factual assertions that are flatly contradictory; there are difficult and confusing technical issues to be resolved; there is a serious dispute over the proper methodology to be used in measuring interference; and the Commission has openly admitted to being confused with respect to appellant's claim. The confusion expressed by the Commission in this case very likely would have been cured if a hearing had been held as required under section 316 and appropriate findings had been made on the issues in dispute.

### B.   *The Nature of the Hearing Requirement Under Section 316*

The requirement of a "public hearing" under section 316, see note 5 *supra*, is the result of an amendment, made on July 16, 1952, to what was formerly section 312(b) of the Communications Act. The amended statute is recorded at Pub.L.No.554–879, 66 Stat. 711, 718 (codified as amended at 47 U.S.C. § 316 (1976)). Former section 312(b), as does the present section 316, authorized the FCC to modify a station license; however, section 312(b) provided that

> No such order or modification shall become final until the holder of such outstanding license or permit shall have been notified in writing of the proposed action and the grounds or reasons therefore and *shall have been given reasonable opportunity to show cause* why such an order or modification should not issue.

Communications Act of 1934, Pub.L.No.416 § 312(b), 48 Stat. 1064, 1087 (1934) (amend-

tent of coverage over average terrain in the absence of interference. Under actual conditions, the true coverage may vary greatly from these estimates because the terrain over any specific path is expected to be different from the average terrain on which the field strength chart was based. Because of these factors the estimated contours give no assurance of service to any specific percentage of receiver locations within the distances indicated.

(b) The field strength contours provided for in this section shall be considered for the following purposes only:

(1) In the estimation of coverage resulting from the selection of a particular transmitter site by an applicant for an FM broadcast station.

(2) In connection with problems of coverage arising out of application of § 73.240.

(3) In determining compliance with § 73.315(a) concerning the minimum field strength to be provided over the principal community to be served.

ed 1952) (emphasis added). Thus, in enacting section 316, Congress made explicit the right of a license holder to show cause *"by public hearing"* why an order of modification should not issue. Communications Act Amendments, 1952, H.R.Rep.No.1750, 82d Cong., 2d Sess. 14 (1952).

Over the past four decades, the courts have had occasion in a series of cases to construe the statutory "show cause" requirement with respect to license modifications, first under the former section 312(b) and then under the present section 316. An examination of this case law will help to amplify the nature of the hearing requirement under section 316.

The first case of note concerned a claim of an "indirect modification," *i.e.*, an extension of the broadcast facilities of one station resulting in objectionable interference to another existing station within its lawfully protected contour. In *FCC v. National Broadcasting Company (KOA)*, 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374 (1943), the Supreme Court ruled that such an indirect modification raised a legally cognizable claim under former section 312(b):

> To alter the rules so as to deprive KOA of what had been assigned to it, and to grant an application which would create interference on the channel given it, was in fact and substance to modify KOA's license. This being so, § 312(b) requires that it be made a party to the proceeding. We can accord no other meaning to the proviso which requires that the holder of the license which is to be modified ... must be given reasonable opportunity to show cause why an order of modification should not issue.... A licensee cannot show cause unless it is offered an opportunity to participate in [a] hearing....

*Id.* at 245–46, 63 S.Ct. at 1037–38.

The Court in *KOA* left undecided the issue of whether the FCC was required under former section 312(b) to afford a hearing to a party to determine whether *in fact* an indirect modification would result from a grant of increased or changed facilities to another station. This question was squarely posed and decided in *L.B. Wilson,*

*Inc. v. FCC,* 170 F.2d 793 (D.C.Cir.1948). There the court ruled that former section 312(b)

> must be held to contemplate hearings before the Commission on the issue [of] modification *vel non* of an outstanding license by the granting of facilities to another station.

170 F.2d at 803. Thus, even before the passage of the current section 316, providing for a "public hearing," this court held in *L.B. Wilson* that an outstanding licensee must be accorded a hearing on the issue of whether or not the extension of facilities to another station will indirectly modify the outstanding license through objectionable interference.

The decision in *L.B. Wilson* also discussed the possibility of a summary disposition, without a hearing, of a claim of objectionable interference under former section 312(b). The petition for reconsideration in *L.B. Wilson* raised the issue of objectionable interference. In response, an argument was advanced that, whether or not there was interference, appellant's claim did not cite any "objectionable interference within the meaning of the term as prescribed by the Commission's Rules and Standards of Good Engineering Practice." 170 F.2d at 804. The Commission thus contended that it could treat appellant's claim as if upon demurrer and rule on the pleadings as a matter of law. The court in *L.B. Wilson* found "this contention not supportable," and noted that it was "out of the ordinary for the Commission, in defense of its denial of hearing to the appellant, to seek refuge in such a common law 'formality' as a demurrer." *Id.* The court added that:

> [W]e do not rule that the Commission may not, at the threshold of consideration of an issue [of] modification *vel non* of an outstanding license by the proposed operations of another station, treat the petition asserting such modification as if upon demurrer and thereby avoid the necessity of hearing proof of the truth of the allegations of "objectionable interference" if as a matter of law they do not "show" such interference within the Commission's rules and standards.

On the issue presented, however, the court concluded that

> included within the "question of law" raised by [appellant's petition for reconsideration] is one of fact, to wit, as to the nature of the measurements or data in the Commission's files, and one of mixed fact and law as to the bearing of this data upon the meaning of the term "objectionable interference" as used in the Commission's rules and standards.

*Id.* A hearing was thus found to be "requisite" in order to dispose of appellant's claim of interference.

In *FCC v. WJR, The Goodwill Station, Inc.*, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949), station WJR objected to the grant of a license to a new station on the ground that the new station would cause objectionable interference with the WJR broadcast signal. The applicant station challenged the legal sufficiency of WJR's petition, claiming that WJR had not set forth facts which, if accepted as true, would constitute interference with WJR's normally protected contour. The Commission agreed with the applicant station and denied the WJR petition without oral argument. In upholding the Commission's action, the Court first ruled that the Due Process Clause of the Fifth Amendment did not require that the Commission afford WJR an opportunity for oral argument on its claim of interference. More significantly, however, the Court held that Congress had "committed to the Commission's discretion, by the terms of § 312(b) and § 4(j) of the Communications Act, the questions whether and under what circumstances it will allow or require oral argument, except where the Act itself expressly requires it." 337 U.S. at 281, 69 S.Ct. at 1106. Further, the Court ruled that the requirement in former section 312(b) of a "reasonable opportunity to show cause" was not to be construed as always including an opportunity for oral argument. *Id.* at 282, 69 S.Ct. at 1106.

Thus, for a time, the decision in *WJR* raised serious questions about whether and under what circumstances a hearing would be required with respect to claims of interference in cases of indirect modification. In 1952, however, after Congress amended section 312(b) and enacted the present section 316, requiring an "opportunity ... to show cause *by public hearing*," many of the questions raised by *WJR* were put to rest.

In 1954, following the passage of section 316 in its present form, this court, in *Harbenito Broadcasting Co. v. FCC*, 218 F.2d 28 (D.C.Cir.1954), reaffirmed the decision in *L.B. Wilson, supra*, as "good law." *Id.* at 31. The court held, in particular, that "if a petition for reconsideration of a construction permit states facts which raise a substantial question as to objectionable interference with an existing license, the petitioner is entitled to a hearing." *Id.* The court added, however, that the Commission may

> as a first step, test the validity of the petition as if upon demurrer and, *after oral argument*, rule upon its sufficiency as a matter of law assuming its allegations to be correct.

*Id.* (emphasis added).

In *Hecksher v. FCC*, 253 F.2d 872 (D.C. Cir.1958), the court adhered to the holding of *Harbenito*, that the Commission may, as an initial step, subject a petitioner's "claims to a test as a matter of law upon oral argument." *Id.* at 874. The court in *Hecksher* added that, "[i]f it then appears that there are disputes as to material facts, an evidentiary hearing limited to those facts should be ordered." *Id.*

Probably the most significant of the decisions concerning the nature of the hearing requirement under section 316 is *National Broadcasting Co. v. FCC*, 362 F.2d 946 (D.C. Cir.1966). In *National Broadcasting*, the court recognized "the cardinal importance of the right to be heard where one's interests are acutely affected by the actions of an administrative agency." *Id.* at 953. In adhering to the principles enunciated in *KOA* and *L.B. Wilson*, the court held that

> the licensee of a station with a specified frequency and power has a right to participate in an evidentiary hearing under Section 316 where another broadcaster seeks a grant to operate on the same

frequency (where the effect of the new grant *may be* to create objectionable electrical interference to the existing licensee) since this would bring about an "indirect" modification of the existing licensee's license.

*Id.* at 954–55 (emphasis added). Because the issue of indirect modification in *National Broadcasting* had been resolved in an earlier clear channel proceeding, the court found that no additional hearing was required under section 316. The court made it clear, however, that but for the prior hearing on the same issue in the clear channel proceeding, the case would have been remanded to the Commission for an evidentiary hearing on the petitioner's claim of indirect modification.

■ In considering the foregoing cases, the following principles emerge regarding the procedural rights due a licensee alleging indirect modification attributable to objectionable interference. First, an existing licensee of a station with a specified frequency has a right to participate in a hearing under section 316 where another broadcaster seeks a grant to operate on the same frequency and where it is alleged that the effect of the new or changed grant may be to create objectionable, electrical interference to the existing licensee.

Second, the type of hearing required depends upon the facts of an individual case and the type of question to be resolved. If, for example, the facts are stipulated and the sole issue involves a question of law (such as, whether petitioner's claim falls within any applicable legal definition of "objectionable interference"), the Commission may rule on the basis of written pleadings and oral argument. If, however, as in the instant case, there are questions of fact to be resolved, then an evidentiary hearing is mandated by section 316.

Applying these principles to the facts of the case at bar, the conclusion is inescapable that appellant had a right to an evidentiary hearing on its claim of destructive interference. As noted above, appellant's petition, alleging that the grant of the KSRF application would create objectionable interference, raises a legally cognizable claim of "modification" under section 316. Since we have found that appellant's claim is not barred either by the *Fourth Report and Order* (or any other proceeding related to Docket 14185), *see* notes 6 and 7 *supra*, or by any existing Commission rule, we hold that appellant was entitled to notice and an opportunity to show cause in an evidentiary hearing why the proposed order of modification should not issue.

Nothing in this opinion should be taken to suggest any conclusions concerning the accuracy of appellant's engineering reports or the legitimacy of its claims of destructive interference. We will leave these questions to be resolved by the Commission, in appropriate findings, after an evidentiary hearing on the disputed factual issues.[12]

### III. ALLEGATIONS OF "DE FACTO REALLOCATION" OF KSRF'S LICENSE

■ As an alternative ground for reversal, appellant has claimed that if KSRF is

---

12. On remand, the Commission should pay heed to the ruling in *National Broadcasting*, where the court stated:

> [I]n spite of our affirmance of the Commission's decision that there will be no objectionable interference, we are aware that the *possibility* exists that experience may perhaps prove differently. The Commission has given us its expert opinion and judgment that it will not occur; we certainly cannot say that it will, given our limited experience in such matters. If such objectionable interference does become apparent at some future time when the results of tests under actual conditions are known, we assume that some course of remedial action will be undertaken by the Commission, either by way of further

> conditioning the operations of [Intervenor] or by any alternative course of action which will eliminate the objectionable interference....
>
> We believe that experience must be the ultimate arbiter of the interference issue. We trust that the Commission will see to it that both the private interest of [Petitioner], and more importantly, the public interest, are adequately protected.

362 F.2d at 958. Upon remand and after an evidentiary hearing, if the Commission again rules against appellant, we would expect that any grant of intervenor's application will be appropriately conditioned to provide for some specific remedial action in the event that any objectionable interference does in fact occur under a test of actual broadcast conditions.

allowed to move its transmitter site "out of downtown Santa Monica and into the hills overlooking Los Angeles, KSRF will be decreasing its signal in Santa Monica and placing a 1 mV/m contour over almost all of Los Angeles for the first time." Appellant's brief at 13–14. KOCM contends that, as a result of this move, KSRF would be tempted to reduce its broadcast activities to Santa Monica and focus its activities on the more lucrative Los Angeles market. Thus, KOCM questions KSRF's true intent in moving its transmitter site.

Appellee correctly notes that appellant's "argument was hinted at in the course of a brief paragraph in a cover sheet attached to Western's petition to deny, never to be addressed again either in the body of the petition to deny or in any other pleading subsequently filed by Western. And although the Commission took note in its initial order that 'KOCM does not claim a de facto reallocation' ([79 F.C.C.2d at 951] J.A. 113), KOCM did not address that finding in its petition for reconsideration." Appellee's brief at 19–20.

Because we find that appellant has never properly raised a claim of "de facto reallocation" before the Commission, and because we can discern no other legitimate claim in appellant's alternative ground for reversal, we affirm the decision of the Commission on this point.

### IV. CONCLUSION

For the reasons set forth above, we affirm in part and reverse in part the Orders of the Commission here under review. After a review of the record, we find that the Commission should have granted a hearing to Appellant KOCM pursuant to section 316 of the Communications Act, 47 U.S.C. § 316 (1976) to determine whether indirect modification of KOCM's license would occur if KSRF's application were granted. Therefore, we reverse the Commission's decision granting KSRF's application and denying KOCM's petition, and remand for an evidentiary hearing consistent with this opinion.

*So ordered.*