T. Barry GRAY and Patricia
R. Gray, Appellants

v.

Michael L. BUONOPANE, Professional Clean Out Service, Inc., Stuart Winneg, Abigail Bridgeford, Orlando Bridgeford, Bridgeford Real Estate, LLC, Ocwen Loan Servicing, LLC, Ocwen Financial Corporation, Udren Law Offices, P.C., Segal McCambridge Singer & Mahoney, Ltd., David A. Yavil, Walter H. Swayze, Sherri J. Braunstein, Linda A. Michler, Michelle Pierson, Rawle & Henderson, and Diane B. Carvell.

Appeal of Patricia R. Gray.

T. Barry Gray and Patricia
R. Gray, Appellants

v.

Michael L. Buonopane, Professional Clean Out Service, Inc., Stuart Winneg, Abigail Bridgeford, Orlando Bridgeford, Bridgeford Real Estate, LLC, Ocwen Loan Servicing, LLC, Ocwen Financial Corporation, Udren Law Offices, P.C., Segal McCambridge Singer & Mahoney, Ltd., David A. Yavil, Walter H. Swayze, Sherri J. Braunstein, Linda A. Michler, Michelle Pierson, Rawle & Henderson, and Diane B. Carvell.

Appeal of Patricia R. Gray.

T. Barry Gray and Patricia R. Gray,

v.

Michael L. Buonopane, Professional Clean Out Service, Inc., Stuart Winneg, Abigail Bridgeford, Orlando Bridgeford, Bridgeford Real Estate, LLC, Ocwen Loan Servicing, LLC, Ocwen Financial Corporation, Udren

Law Offices, P.C., Segal McCambridge Singer & Mahoney, Ltd., David A. Yavil, Walter H. Swayze, Sherri J. Braunstein, Linda A. Michler, Michelle Pierson, Rawle & Henderson, and Diane B. Carvell.

Appeal of Patricia R. Gray.

Superior Court of Pennsylvania.

Submitted April 16, 2012.
Filed Aug. 22, 2012.
Reargument Denied Oct. 24, 2012.

Patricia R. Gray, appellant, pro se.

David A. Yavil, Philadelphia, for Bridgeford, Bridgeford Real Estates, Swayze, Walter and Segal, appellees.

Diane B. Carvell, Harrisburg, for Buonopane, Professional Clean Out Service, Rawle & Henderson and Carvell, appellees.

Linda A. Michler, Betherl Park, for Ocwen Loan, Ocwen Financial, Michler and Pierson, appellees.

BEFORE: BENDER, J., LAZARUS, J., and STRASSBURGER *, J.

OPINION BY BENDER, J.:

In this case of first impression, Patricia R. Gray, acting *pro se,* appeals the trial court's orders dismissing the plaintiffs' Amended Complaints pursuant Pa.R.C.P. 233.1. Gray also challenges the provision of the order barring herself and T. Barry Gray (the Grays), as *pro se* plaintiffs, from filing, without prior leave of court, new actions against the named defendants for the same claims or claims related to those addressed in the case of *Ocwen Loan Servicing LLC v. Gray,* June Term 2000, No. 001444.[1] Upon review, we find Gray's claims devoid of merit. Accordingly, we affirm the trial court's order dismissing these actions pursuant to Pa.R.C.P. 233.1 and barring the Grays from further attempts to re-litigate issues addressed in the prior action.

The trial judge, the Honorable Allan L. Tereshko, accurately summarized the factual and procedural history of this matter as follows:

The property in question [2414 North 54th Street, Philadelphia, PA 19131] was the subject of a foreclosure action, which was commenced by the filing of a Complaint on June 14, 2000. [*See Ocwen Loan Servicing LLC v. Gray,* June Term 2000, No. 001444, *sub nom., Bankers Trust Co. of Cal. v. Gray* ]. Stuart Winneg, Esq. of Udren Law Offices, P.C. represented Ocwen Loan Servicing, LLC (hereinafter "Ocwen") in the foreclosure action. At the conclusion of the foreclosure action, the property was sold in a Sheriff's Sale on August 5, 2008. (Fourth Amended Complaint, ¶ 30.) On August 6, 2008, Mrs. Gray returned to the subject property after being out of town and discovered that the locks on the property had been changed. (Fourth Amended Complaint, ¶ 35). Mr. Gray accompanied Mrs. Gray to the home on August 9, 2008 and observed that his car had been removed from the driveway. (Fourth Amended Complaint, ¶ 36). A neighbor, Mr. Wing allegedly approached Mr. and Mrs. Gray to inform them that his daughter had called the police after observing unidentified

---

* Retired Senior Judge assigned to the Superior Court.

1. Although Patricia Gray continues to act on her own behalf, neither T. Barry Gray nor counsel purporting to act on his behalf have entered appearances of record.

individuals entering the home who identified themselves as employees of a real estate company, which Plaintiffs believed to be Bridgeford Real Estate, LLC. (Fourth Amended Complaint, ¶¶ 37–38).

On August 28, 2008, Plaintiffs presented an Emergency Petition to Discontinue Lockout before Judge Gary DiVito. (See Docket). According to the Certification Regarding Status of Foreclosed Premises, the property in question was not owner-occupied as of April 21, 2008. (Exhibit "F" to Defendant Michael Buonopane and Professional Clean Out Service, Inc.'s Motion to Dismiss). Plaintiffs admitted that they had not been living at the subject property on the date of the Sheriff's Sale, but were instead living in Folsom, Pennsylvania. (Exhibit "D" to Plaintiffs' Fourth Amended Complaint, pg. 10).

Plaintiffs requested that Ocwen return possession of the subject premises and replace any items that were removed from the home, returning the premises to its status quo as of August 4, 2008. (Exhibit "C" to Defendant Michael Buonopane and Professional Clean Out Service, Inc. Motion to Dismiss). Plaintiffs also requested that Ocwen reinstall the old locks or provide new locks. *Id.* Plaintiffs admitted that Ocwen offered them a copy of the new key; however, Plaintiffs requested that all copies of the key be turned over to them. (Exhibit "D" to Plaintiffs' Fourth Amended Complaint, pg. 7).

In the Notes of Testimony from the August 28, 2008 hearing, Mr. Winneg described the underlying foreclosure action, stating, "This has been a contentious litigation for going on 8 years. We had a full trial before Judge Maier; extensive. Now it is before Superior Court. A supersedeas has been denied." (Exhibit "D" to Plaintiffs' Fourth Amended Complaint, pg. 9). Mr. Winneg testified that nothing, including Mr. Gray's car, was removed from the property. *Id.* One of the pictures taken of the home allegedly shows a car overgrown with weeds with a 2006 inspection sticker and no license plate, but Mr. Gray did not confirm nor deny whether the car depicted was the same one which he alleges Defendants conspired to remove. *Id.*

Judge DiVito ordered the Plaintiffs to remove their personal belongings from the property within 20 days after Plaintiffs protested that they could not remove the items within the 10 days proposed by Judge DiVito (Exhibit "D" to Plaintiffs' Fourth Amended Complaint, pgs. 11, 13). Judge DiVito also denied a provision proposed by Plaintiffs, which stated that they would have the right to seek claims for any loss or damage resulting from the lockout. (Exhibit "C" to Defendant Michael Buonopane and Professional Clean Out Service, Inc.'s Motion to Dismiss). Plaintiff's appeal of Judge DiVito's Order was denied by the Superior Court (See Docket).

Plaintiffs failed to comply with Judge DiVito's August 28, 2008 Order requiring them to remove their belongings from the subject premises (Bridgeford Defendants Motion to Dismiss, ¶ 12). Plaintiffs did not move for reconsideration of Judge DiVito's Order, but filed an appeal with Superior Court, which was dismissed. (See Docket). Plaintiffs also failed to file a Petition for Allowance of Appeal with the Supreme Court following the Superior Court's dismissal of their appeal. (See Docket).

Plaintiffs have filed three lawsuits pertaining to the alleged illegal lockout and destruction of personal property, naming the actors allegedly involved, their counsel and counsel's law firms.

Plaintiffs commenced this action by filing their Complaint on November 8, 2010 on the basis of an alleged illegal lockout and the destruction of personal property. (See Docket). Plaintiffs contend that, following the sale of the property, Defendants changed the locks and conspired to lock them out of their home. (Fourth Amended Complaint, ¶ 33). Plaintiffs assert that Stuart Winneg, counsel for Ocwen, ordered the Bridgeford Defendants to lock the Plaintiffs out of the subject property and that the Bridgeford Defendants hired Professional Clean Out Service, Inc. (of which Michael Buonopane is the corporate and professional officer) to perform the locksmith services. (Fourth Amended Complaint, ¶¶ 53, 61, 64).

Plaintiffs have filed 4 Amended Complaints throughout the course of this litigation. Plaintiffs assert claims for Negligence, Trespass to Real Property, Replevin, Trespass to Personal Property, Conversion, Conspiracy, Fraudulent Misrepresentation, and Declaratory Judgment as Ancillary Relief. On April 21, 2011, this Court granted Motions to Dismiss by Michael Buonopane and Professional Clean Out, Inc. and by the Bridgeford Defendants. *Id.* On May 4, 2011, this Court granted Stuart Winneg and Udren Law Offices, P.C.'s Motion to Dismiss. *Id.* Plaintiffs have filed three 1925(b) Statements of Matters Complained of on Appeal dated June 9, 2011, June 11, 2011 and August 2, 2011. *Id.* Plaintiffs have also filed three appeals, raising identical issues. *Id.* The issues on appeal are as follows:

1. Whether this Court erred in granting the Bridgeford Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint when the Fourth Amended Complaint was of record.

2. Whether this Court erred in granting Michael Buonopane and Professional Clean Out Service, Inc.'s and Udren Law Offices, P.C. and Stuart Winneg's Motions to Dismiss Plaintiffs' Second Amended Complaint when the Third and Fourth Amended Complaints were of record.

3. Whether this Court erred in dismissing Plaintiffs' claims on the basis of Pa.R.C.P. 233.1, "Frivolous Litigation. Pro Se Plaintiff. Motion to Dismiss."

4. Whether this Court erred in concluding that Plaintiffs' claims were barred by collateral estoppel or *res judicata.*

Trial Court Opinion, 10/6/11, at 5–6.[2]

■ We commence our analysis of Gray's questions with question number 3,

---

**2.** Before proceeding, we pause to note that notwithstanding the clear directive of the Rules of Appellate Procedure, Gray has failed to attach any of the Rule 1925(b) Concise Statements ordered by the trial court to her Brief for Appellant. *See* Pa.R.A.P. 2111(d). This omission is especially significant in that it deprives us of the ability to discern whether the issues raised in Gray's ponderous 11–question Statement of Questions Involved have in fact been preserved for appellate review. *See* Pa.R.A.P. 1925(b)(3)(vii). To compound matters, it appears that Gray also failed to file a Reproduced Record as required by those same Rules, thus compelling the appellees to file a supplemental record. Moreover, the record as certified to this Court, the completion of which is Gray's responsibility as the appellant, is noticeably fragmented. *See Commonwealth v. Bongiorno,* 905 A.2d 998, 1001 (Pa.Super.2006) ("[T]he ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts.").

Consequently, we have no access to Gray's Rule 1925(b) statements. Although the Rules of Appellate Procedure empower us to dismiss an appellant's appeal for failures to complete

which challenges the trial court's dismissal of her claims as "Frivolous Litigation" pursuant to Pa.R.C.P. 233.1. Brief for Appellant at 16. "[T]he interpretation and application of a Pennsylvania Rule of Civil Procedure presents a question of law." *Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity*, 32 A.3d 800, 808 (Pa.Super.2011) (quoting *Boatin v. Miller*, 955 A.2d 424, 427 (Pa.Super.2008)). "Accordingly, to the extent that we are required to interpret a rule of civil procedure, 'our standard of review is *de novo*, and our scope of review is plenary.'" *Id.* (quoting *Boatin*, 955 A.2d at 427). Pursuant to the rules of construction, the focal point of our analysis in such a review is clear: "The object of all interpretation and construction is to ascertain and effectuate the intention of the Supreme Court." Pa. R.C.P. 127(a). If the language of a given rule is not explicit, we may discern the Court's intention by weighing, "among other matters[:]"

> (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous history of the rule; and (8) the practice followed under the rule.

Pa.R.C.P. 127(c). Finally, "[t]he rules shall be liberally construed to secure the just, speedy, and inexpensive determination of every action or proceeding to which they are applicable." Pa.R.C.P. 126.

Applying these benchmarks of interpretation, we discern that Rule 233.1 promulgates a procedure new to Pennsylvania practice that limits the ability of *pro se* plaintiffs to prolong litigation through the filing of serial complaints after the claims they allege have been resolved. The language of the Rule provides as follows:

**Rule 233.1. Frivolous Litigation. Pro Se Plaintiff. Motion to Dismiss**

> ▆▆▆ (a) Upon the commencement of any action filed by a *pro se* plaintiff in the court of common pleas, a defendant may file a motion to dismiss the action on the basis that
>
> > (1) the *pro se* plaintiff is alleging the same or related claims which the *pro se* plaintiff raised in a prior action against the same or related defendants, and
> >
> > (2) these claims have already been resolved pursuant to a written settlement agreement or a court proceeding.
>
> (b) The court may stay the action while the motion is pending.
>
> (c) Upon granting the motion and dismissing the action, the court may bar the *pro se* plaintiff from pursuing additional *pro se* litigation against the same or related defendants raising the same or related claims without leave of court.
>
> (d) The court may *sua sponte* dismiss an action that is filed in violation of a court order entered under subdivision (c).
>
> > *Note:* A *pro se* party is not barred from raising counterclaims or claims against other parties in litigation that the pro se plaintiff did not institute.

---

the record or to adhere to briefing requirements, *see* Pa.R.A.P. 2101, we abstain from doing so here in recognition of Gray's *pro se* status. Nevertheless, we limit our review of the questions presented to those documented in the trial court's Opinion, as they are the only questions we can document having been properly preserved. *See* Pa.R.A.P. 1925(b)(1).

(e) The provisions of this rule do not apply to actions under the rules of civil procedure governing family law actions.

Pa.R.C.P. 233.1.

Rule 233.1 was promulgated by our Supreme Court in 2010 to stem a noted increase in serial lawsuits of dubious merit filed by *pro se* litigants disaffected by prior failures to secure relief for injuries they perceived but could not substantiate. *See* Pa.R.C.P. 233.1 Comment. Accordingly, the drafting committee constructed the Rule with attention to potential manipulation of the legal process by those not learned in its proper use, seeking to establish accountability for *pro se* litigants commensurate with that imposed upon members of the Bar. *See id.* Thus, the Rule operates to spare potential defendants the need to defend spurious claims, first, by allowing the expeditious dismissal of duplicative *pro se* actions and, second, by empowering the trial court to ban the *pro se* litigant's commencement of further actions against such defendants. *See id.*

 Following scrutiny of the Rule's text, we discern the extent of our Supreme Court's intent in the Rule's allowance of summary proceedings for dismissal substantially less exacting than those required by the Rules of Court for counseled actions, as well as the absence from the language of any of the elements encompassed under the doctrines of *res judicata*[3] and collateral estoppel.[4] The Rule's language is noteworthy, specifically, in its omission of any reference to existing procedures under the Rules for obtaining judgment prior to trial, *see, e.g.*, Pa.R.C.P. 1028(a)(4) (Preliminary Objections (Demurrer)), 1034 (Judgment on the Pleadings), 1035.2 (Summary Judgment). Indeed, the very fact that Rule 233.1 was promulgated in the presence of this series of rules and procedures, that by design tests every aspect of the legal and factual merit of a plaintiff's claim, announces the Supreme Court's focus and intent with exceptional clarity. Quite simply, the Court saw no reason to expose already beleaguered defendants to the demands of extended litigation and the rigor of technical procedural rules for summary disposition when the claims at issue have already been addressed in a substantive manner and resolved.

As noted by the drafting committee, the Rule allows that

[u]pon the filing of an action by a *pro se* plaintiff, a defendant may file a motion to dismiss a pending action provided that (1) the *pro se* plaintiff is alleging the same or related claims against the same or related defendants, and (2) the claims have already been resolved pur-

---

**3.** The doctrine of *res judicata* will preclude an action where the former and latter suits possess the following common elements: "(1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued." *Daley v. A.W. Chesterton, Inc.,* — Pa. —, 37 A.3d 1175, 1189–1190 (2012) (quoting *In the Matter of Iulo,* 564 Pa. 205, 766 A.2d 335, 337 (2001)).

**4.** Collateral estoppel applies if four elements are present:

(1) An issue decided in a prior action is identical to the one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Columbia Medical Group, Inc. v. Herring & Roll, P.C.,* 829 A.2d 1184, 1190 (Pa.Super.2003).

suant to a settlement agreement or a court proceeding.

Pa.R.C.P. 233.1 Comment.

■ Contrary to Gray's suggestion, neither the language of the Rule nor the explanatory comment mandate the technical identity of parties or claims imposed by *res judicata* or collateral estoppel; rather, it merely requires that the parties and the claims raised in the current action be *"related"* to those in the prior action and that those prior claims have been *"resolved."* Pa.R.C.P. 233.1(a). These two terms are noteworthy in their omission of the technical precision otherwise associated with claim and issue preclusion; whereas parties and/or claims are to be "identical" under the purview of those doctrines, Rule 233.1 requires only that they be sufficiently related to inform the trial court, in the exercise of its discretion, whether the plaintiff's claim has in fact been considered and "resolved." The drafting committee's recourse to the word "resolved" in this context is equally significant. In the Rule's requirement that the matter have been "resolved pursuant to a written settlement agreement or a court proceeding," the language assures that the *pro se* litigant is availed of a chance to address his claim subject to the contractual guarantee of a settlement agreement or to the procedural safeguards that attend a court proceeding. It does not require, however, that the matter has progressed to a "final judgment on the merits," *Columbia Medical Group, Inc.,* 829 A.2d at 1190, nor does it require the "identify of the quality or capacity in the persons for or against whom the claim is made[,]" *Daley,* 37 A.3d at 1189–90. In view of the circumstances under which the rule was promulgated, "the mischief to be remedied," and the object to be attained, *see* Pa.R.C.P. 127(c), we find these multiple omissions indicative of the manner in which the Supreme Court

intends Rule 233.1 to operate and dispositive of Gray's current actions.

In support of her claim that the court erred in dismissing her action pursuant to Rule 233.1, Gray contends that the trial court relied in error on the prior disposition by Judge DiVito that denied Gray's Emergency Petition to Discontinue Lockout and ordered the Grays to remove their personal property from the foreclosed premises within twenty days. Brief for Appellant at 18. Gray argues specifically that Rule 233.1(a)(1) cannot apply to her current claims as she was not the plaintiff in the prior action but, as the action was one in mortgage foreclosure, was a defendant. *Id.* She argues further that the claims she raises now cannot be deemed resolved in the prior action pursuant to Rule 233.1(a)(2), as the causes of action stated in her current complaints were not at issue in the prior mortgage foreclosure action. *Id.* (citing causes of action for "negligence, trespass to real property, replevin, declaratory judgment, conversion, etc."). Gray asserts, in addition, that the content of Judge DiVito's order is not sufficiently definite to allow any determination of his rationale such as to preclude the claims she raises now. *Id.* ("[N]owhere in the judge [sic] DiVito's order denying the emergency motion and nowhere in the Transcript of the hearing did he state the lock out of the defendants (appellant(s)) was legal or illegal and since we don't have a crystal ball its [sic] improper for the appellees and the court below to extrapolate that in forming their position Judge DiVito said the lockout was legal."). Gray's arguments misconstrue the import of Rule 233.1, and misapprehend the substance of her own legal actions. We find no merit in her positions.

On August 28, 2008, following the ultimate conclusion of the action in mortgage foreclosure and the resulting sheriff's sale,

Gray filed, in the trial court, a document she styled an Emergency Motion to Discontinue Lock–Out of Defendants at the docket number of the mortgage foreclosure action. In her motion, Gray averred that, following the sheriff's sale, she ventured to the residence at 2414 N. 54th Street and found that, in her absence, the locks had been changed. Emergency Motion to Discontinue Lock–Out of Defendants, 8/24/08, at 1. Gray averred further that, upon speaking with a neighbor, she learned that he had seen intruders enter the home and called the Philadelphia Police, but that the officers who investigated informed him that the individuals present were employees of a real estate company. See id. at 2. Gray pled further that T. Barry Gray had visited the home two days later and found that a car he had parked in the driveway had been removed. See id. Mr. Gray then faxed counsel for one of the defendants some seven times, demanding that the car and any items taken from the house be returned, but he received no response. See id. Finally, Gray requested that the court enter a "temporary restraining order" directing the defendants to change the locks back, abstain from retaining any copies of the keys, and return any personalty that had been removed from the property.[5]

In response to Gray's motion, the trial court convened a hearing before the Honorable Gary DiVito on August 28, 2008, during which the Grays testified concerning the change of the locks. Stuart Winneg, Esquire, also testified on behalf of the lender and, under questioning by Judge DiVito, asserted that no personalty had been removed from the subject property and that he had documented the interior of the home with photographs. N.T., Hear-

ing, 8/28/08, at 9. Winneg attested further that although he had seen a photo of car in the driveway with an expired inspection sticker and no license plate, overgrown with weeds, he had no idea of the whereabouts of the vehicle, and that his client had not disposed of it. See id. at 6, 9.

Following the completion of testimony, Judge DiVito denied the Grays' Emergency Motion, but specifically granted them a period of twenty days to remove all personalty from the premises and ordered them to complete the removal within that time. Unfortunately for the Grays, they did not comply with the court's order. In the civil actions she filed subsequently, Patricia Gray avers that the defendants, including the lender, its counsel and all of the intermediary service providers involved in cleaning out the house, engaged in tortious conduct when, after the expiration of the twenty-day period, they removed and disposed of personalty from the subject property. As noted, supra, Patricia Gray's brief invokes causes of action for "negligence, trespass to real property, replevin, declaratory judgment, conversion, etc.[,]" yet perusal of her multiple complaints and amended complaints reveals that every single claim raised finds its impetus in the disposal of Gray's personalty and demands damages commensurate with her asserted loss. Significantly, the disposal of Gray's personalty was the very subject of the hearing before Judge DiVito—a hearing convened on Gray's motion, in response to Gray's allegations that the lender and its agents and attorneys had unlawfully removed personalty from the home. Thus, contrary to the tendentious assertions of Gray's brief that the basis for Judge DeVito's decision cannot be ascertained, the record reveals the only possible basis in the form of the allegations

5. Gray did not identify any property that she believed had been taken from the inside of the home.

of Gray's motion that her personalty had been removed from the premises. The court accepted testimony dispositive of that issue and, on the implicit finding that nothing had been removed from the house, required the Grays to clear the property on their own within twenty days. *See id.* at 13; *see also* Order, August 28, 2008, at 1 (emphasis added) (allowing the Grays "twenty (20) days within which to arrange the removal *and to remove* all personalty from premises . . . ."). Whatever the legal rectitude of the court's order (upon which we assume no position), the court reached its conclusion in a "court proceeding" convened in response to Gray's own motion, and thereby "resolved" the Grays' claims to personalty stored in the house. Although the Grays received personal notice of trial court's order, they apparently made no effort to avail themselves of it and remove their possessions, thus negating the benefit of a court proceeding they had initiated and accepting the consequence that further recourse against any of the parties involved might be precluded by the mechanism of Rule 233.1.

As discussed, Rule 233.1 does not require the highly technical prerequisites of *res judicata* or collateral estoppel to allow the trial court to conclude that a *pro se* litigant's claims are adequately related to those addressed in prior litigation. Nor does it require an identity of parties or the capacities in which they sued or were sued. Rather, it requires a rational relationship evident in the claims made and in the defendant's relationships with one another to inform the trial court's conclusion that the bar the Rule announces is justly applied. Because we find that those relationships are fully evident here, we affirm the trial court orders dismissing Gray's complaints pursuant to Pa.R.C.P. 233.1.

Order **AFFIRMED.**

Judge STRASSBURGER files a concurring statement.

## CONCURRING STATEMENT BY STRASSBURGER, J.:

I join the opinion of the Majority in its entirety. I write separately to address a collateral, procedural issue raised by the *pro se* plaintiffs/appellants, Patricia and T. Barry Gray (the Grays).

Instantly, the trial court dismissed the Grays' second and third amended complaints pursuant to interim motions to dismiss filed by various defendants under Pa. R.C.P. 233.1. By the time the trial court granted these defendants' motions to dismiss, the Grays' again amended their complaint, and their fourth amended complaint was the complaint of record. The Grays maintain that their fourth amended complaint was filed as of right and by virtue of Pa.R.C.P. 1028(c)(1), the complaint mooted the defendants' preliminary objections as well as their motions to dismiss.

While the Grays are correct that as a general proposition, an amended complaint filed as of right moots preliminary objections and replaces all prior complaints, these legal precepts are inapplicable to Pa.R.C.P. 233.1.

A motion to dismiss pursuant to Pa. R.C.P. 233.1 is not within the class of preliminary objections listed in Pa.R.C.P. 1028. Rather, it is a separate and distinct procedural device that permits, in its own right, a defendant to move for dismissal "[u]pon commencement of any action filed by a *pro se* plaintiff[.]" Pa.R.C.P. 233.1(a). Given the fact that a Pa.R.C.P. 233.1 motion to dismiss is different from a Pa. R.C.P. 1028 preliminary objection, the mere filing of an amended complaint does not moot a Pa.R.C.P. 233.1 motion to dismiss. Therefore, the trial court in the instant case was not prohibited from considering the defendants' motions to dismiss

despite the fact that the Grays subsequently filed amended complaints.