J-A02034-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: TONI RUZACKI, A/K/A TONI YERACE, A/K/A DELINA PERLA YERACE, A/K/A LILIAN YERACE | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: STEPHEN MATTHEW RUZBACKI | : : : : | |
| | : | No. 660 WDA 2025 |

Appeal from the Order Entered May 13, 2025
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
00014-2023

BEFORE:  STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:                                    **FILED: May 15, 2026**

Stephen Matthew Ruzbacki ("Ruzbacki") appeals pro se from the order entered by the Butler County Court of Common Pleas ("orphans' court") granting the motion for sanctions filed by the Borough of Saxonburg ("Borough") after finding Ruzbacki in contempt of court.  Ruzbacki argues the orphans' court improperly imposed sanctions on him without notice or an opportunity to be heard or determining his ability to pay the sanction.  We affirm.

On January 19, 2023, the Butler County Area Agency of Aging ("BCAAoA") filed a petition to appoint an emergency guardian for Ruzbacki's ninety-five-year-old mother, Toni Ruzbacki a/k/a Toni Yerace a/k/a Delina Perla Yerace a/k/a Lilian Yerace ("T.R.").  In the petition, BCAAoA alleged that in November 2022, T.R. was placed in a geriatric psychiatric unit.  On

November 15, 2022, a doctor at the Butler Memorial Hospital indicated T.R. suffered from major neurocognitive disorder with behavioral disturbance and found T.R. could not make her own medical decisions, requiring the appointment of a guardian of her person and estate. T.R.'s son and agent pursuant to a power of attorney, Patrick Holmes, subsequently placed her in a personal care home. The petition further alleged that Ruzbacki removed T.R. from the personal care home and had her execute a new power of attorney, naming Ruzbacki as her agent. BCAAoA also averred that Ruzbacki made several monetary payments from T.R.'s bank account to his own.

That same day, the orphans' court granted the petition, and appointed Rachelle C. Llewellyn ("Llewellyn") as the emergency guardian of T.R.'s person for a period of seventy-two hours, to be extended by twenty days automatically, and her estate for a period of thirty days. Upon petition from BCAAoA, the orphans' court extended the emergency guardianship on March 1, 2023, and March 21, 2023.

On April 6, 2023, the orphans' court held a hearing on the permanent appointment of a guardian for T.R. Ruzbacki and T.R. did not appear at the hearing, but T.R. was represented by court-appointed counsel at the hearing. Following the hearing, the orphans' court appointed Llewellyn as the permanent plenary guardian of T.R.'s person and her estate.

Subsequently, Ruzbacki filed multiple pro se motions before the orphans' court—a petition to transfer guardianship to another state, motion to

set aside order or judgment, motion for reconsideration and petition for writ of habeas corpus, motion for summary disposition to terminate guardianship and restore rights, and motion to compel. On August 24, 2023, the orphans' court denied the motions. Ruzbacki filed a notice of appeal from the numerous orders extending the guardianship and the orders entered on August 24, 2023. As the appeal was taken from multiple non-appealable orders, this Court ultimately granted BCAAoA's application to quash the appeal and dismissed as moot applications for relief he had filed before this Court. *See In re T.R.*, 1055 WDA 2023 (Pa. Super. 2023) (per curiam order). As part of the order, this Court stated that Ruzbacki "is cautioned that the filing of further frivolous appeals or applications for relief may result in the imposition of sanctions." *Id.* (capitalization omitted). On July 22, 2024, the Pennsylvania Supreme Court denied allowance of appeal. *See In re T.R.*, 73 WAL 2024 (Pa. 2024).

Thereafter, Ruzbacki filed a motion to open judgment against various defendants, raising claims of extrinsic fraud and fraud on the court. Of relevance to this appeal, Ruzbacki named, among others, Joseph Beachem, the chief of the Borough's police department, as a defendant, asserting that Chief Beachem manipulated the guardianship proceedings to the detriment of Ruzbacki and T.R. Ruzbacki served Chief Beachem at his personal residence. The Borough, through its counsel at Gallagher Law Group, filed an answer on behalf of Chief Beachem, arguing that Ruzbacki did not plead fraud with particularity and failed to properly join Chief Beachem to the proceedings. The

Borough sought to strike the motion to open and $1,330 in counsel fees, plus court costs.

On September 11, 2024, the orphans' court scheduled a hearing for September 24, 2024 on both Ruzbacki's motion and the Borough's answer. Notably, in the order, the orphans' court directed that Ruzbacki "shall not serve any further papers or filings on the purported Defendant, Chief [] Beachum, at his personal residence." Orphans' Court Order, 9/11/2024. The day prior to the scheduled hearing, Ruzbacki filed an amended motion to open judgment pursuant to extrinsic fraud and fraud on the court. Ruzbacki named, among others, Chief Beachem, the Borough, and Gallagher Law Group as defendants. In the amended motion, Ruzbacki alleged that Chief Beachem unlawfully arrested him.[1] Again, despite the orphans' court's admonishment, Ruzbacki served Chief Beachem directly at his residence. At the hearing, the orphans' court allowed the Borough to use its initial answer to the motion as an answer to the amended motion.

On September 25, 2024, the orphans' court dismissed Ruzbacki's amended motion with prejudice. The court further found Ruzbacki to be in contempt of court for violating its directive in the September 11, 2024 order by serving Chief Beachem directly. It directed him to pay $3,300 to the Borough, with $1,300 for counsel fees for the motion for sanctions and $2,000

---

[1] According to Ruzbacki, police arrested him on March 30, 2023, while "peacefully picketing" after being denied access to T.R. Ruzbacki's Brief at 9.

for counsel fees for the contempt of court. The court further ordered Ruzbacki to pay BCAAoA $1,000 in counsel fees. Additionally, the orphans' court rescinded Ruzbacki's IFP status and precluded Ruzbacki "from filing any further pleadings relating to or arising out of this case without an *Order of Court* from the undersigned approving said filing. … Failure to abide by this *Order of Court* and all other prior *Orders of Court* will result in [] Ruzbacki being held in contempt of Court and assessed further fines and/or incarceration." Orphans' Court Order, 9/25/2024, at 3 (unnumbered) (emphasis in original). Ruzbacki did not appeal this order.

On January 8, 2025, T.R. passed away. On May 12, 2025, Ruzbacki sent an email to Gallagher Law Group stating that he was filing a motion for reconsideration of the September 25, 2024 sanctions. The following day, Ruzbacki presented the motion in the orphans' court, contesting the sanctions, and seeking to restore his access to the courts. N.T., 5/13/2025, at 2, 3-4. Attorney Sean Gallagher, on behalf of the Borough, indicated that the sanctions were properly awarded and that Ruzbacki had the opportunity to be heard at the September 24, 2024 hearing. *Id.* at 2-3, 4. He further noted that Ruzbacki failed to provide five days' notice of the filing of the motion as required by the Butler County Court Rules. *Id.* at 3. The orphans' court then pointed to Ruzbacki's misuse and abuse of legal proceedings, emphasizing that the court had precluded him from filing any further proceedings relating to the case without the court's permission. *Id.* at 4-6, 9-10; *see also id.* at

5-6, 9, 10 (noting Ruzbacki filed numerous petitions arguing there was fraud on the court but could not support these allegations). The court found that Ruzbacki used the court for "nothing but harassment." *Id.* at 8. The orphans' court stated that it was not revoking its prior order sanctioning Ruzbacki, highlighting that he had the opportunity to appeal but failed to do so. *Id.* at 10. At this point, Attorney Gallagher sought additional sanctions in the amount of $400 for his time at the hearing on the motion for reconsideration. *Id.* As the court had previously informed Ruzbacki that it would find him in contempt if he failed to abide by the court's orders, it found him in contempt and ordered him to pay $400 for the Borough's attorneys' fees. *Id.* at 11. The court issued a written order on that basis and denying Ruzbacki's motion.

Ruzbacki filed a motion for reconsideration, which the orphans' court denied. Ruzbacki filed a timely notice of appeal from the May 13, 2025 order.

On appeal, Ruzbacki raises the following questions for our review:

1. Whether the orphans' court erred in imposing sanctions without affording [Ruzbacki] a full and fair opportunity to be heard, in violation of constitutional due process protections (Fourteenth Amendment; Pa. Const. Art. I, § 11).

2. Whether the orphans' court improperly imposed sanctions and filing restrictions where [Ruzbacki] acted in good faith to expose alleged fraud and elder abuse.

3. Whether the orphans' court abused its discretion by relying on unverified allegations by opposing counsel to impose punitive sanctions, revoke IFP status, and suppress [Ruzbacki's] access to court.

Ruzbacki's Brief at 3-4 (unnecessary capitalization omitted, numbers added).[2]

## May 13, 2025 Order

Ruzbacki argues that the orphans' court imposed sanctions without affording him proper notice or an opportunity to be heard. *Id.* at 13-14, 17-18. He claims that the orphans' court imposed the sanctions as a punishment for his continued pursuit of legal remedies. *Id.* at 14. Ruzbacki further contends that the orphans' court judge exhibited judicial bias by relying on Attorney Gallagher's unsupported allegations to impose the sanctions. *Id.* at 16. To that end, he argues that the orphans' court made no findings of actual harm to the defendants and did not consider his ability to pay the sanctions. *Id.* at 19. Ruzbacki seeks the vacatur of the sanctions and a remand for further proceedings with a new judge. *Id.* at 17, 21.

"When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion."

---

[2] We note that although Ruzbacki raises three claims in his statement of questions involved, he raises eight claims in the argument section of his brief, in violation of Appellate Rule 2119(a). *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued"). Nevertheless, we will overlook this defect and address Ruzbacki's claims because although he raises several distinct claims pertaining to the September 25, 2024 and May 13, 2025 orders, many are interrelated and we are able to address them together. *But see Elliot-Greenleaf, P.C. v. Rothstein*, 255 A.3d 539, 542 (Pa. Super. 2021) ("While this court is willing to liberally construe materials filed by a pro se litigant, we note that appellant is not entitled to any particular advantage because [he] lacks legal training.") (citation omitted).

*Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009) (citation omitted). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute." *Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013) (citation omitted); *see also* Pa.R.Civ.P. 1910.25. "The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained." *Gunther v. Bolus*, 853 A.2d 1014, 1018 (Pa. Super. 2004) (citations and quotation marks omitted).

The general rule in proceedings for civil contempt is that "the burden of proof rests with the complaining party to demonstrate, by a preponderance of the evidence, that the defendant is in noncompliance with a court order." *Habjan*, 73 A.3d at 637 (citation omitted).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Id.* (citation omitted).

"[W]hen the contempt proceedings are predicated on a violation of a court order that followed a full hearing, due process requires no more than notice of the violations alleged and an opportunity for explanation and defense." *Diamond v. Diamond*, 792 A.2d 597, 601 (Pa. Super. 2002)

(citation and quotation marks omitted); *see also Interest of S.L.*, 202 A.3d 723, 729 (Pa. Super. 2019).

Further, a "court may bar the pro se plaintiff from pursuing additional pro se litigation against the same or related defendants raising the same or related claims without leave of court." Pa.R.Civ.P. 233.1(c); *see also Gray v. Buonopane*, 53 A.3d 829, 835 (Pa. Super. 2012) ("the Rule operates to spare potential defendants the need to defend spurious claims, first, by allowing the expeditious dismissal of duplicative pro se actions and, second, by empowering the trial court to ban the pro se litigant's commencement of further actions against such defendants").

> Attorneys' fees and other disbursements necessitated by the contemnor's noncompliance may be recovered by the aggrieved party in a civil contempt case. Because an award of counsel fees is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent, it is coercive and compensatory, and not punitive. Counsel fees are a proper element of a civil contempt order.

*Mrozek v. James*, 780 A.2d 670, 674 (Pa. Super. 2001) (citations omitted).[3]

Although the trial court did not hold a formal hearing prior to finding Ruzbacki in civil contempt, the essential due process requisites, i.e., notice and the opportunity to be heard, were met. Ruzbacki unquestionably had notice of the September 25, 2024 order directing him to refrain from filing any

---

[3] "An award of attorney's fees as a sanction in a civil contempt case is separate and apart from the statutory provision for [attorney's] fees under 42 Pa.C.S.[] § 2503(7)." *Thomas v. Thomas*, 194 A.3d 220, 226 n.2 (Pa. Super. 2018) (cleaned up).

additional pleadings related to the guardianship of his mother without the court's permission or he would face sanctions. *See* Orphans' Court Order, 9/25/2024, at 3 (unnumbered). Further, on May 13, 2025, he had ample opportunity to be heard on his motion for reconsideration of the September 25, 2024 order and rebut the orphans' court's finding regarding the contempt, but failed to do so. N.T., 5/13/2025, at 10-12. As such, there was no due process violation. *See Cunningham v. Cunningham*, 182 A.3d 464, 475 (Pa. Super. 2018) (rejecting appellant's due process claim where appellant had notice of the contempt allegations and had the opportunity to respond).

Moreover, the orphans' court did not abuse its discretion in finding Ruzbacki in contempt of a prior court order. By filing the late motion for reconsideration of the September 25, 2024 order, without permission of the court, Ruzbacki intentionally flouted the court's order directing him to request permission prior to filing any pleadings related to T.R.'s case. Ruzbacki does not dispute that he had notice of the order, nor does he provide any reason for his failure to seek the court's permission before filing the untimely motion for reconsideration. Accordingly, we find no abuse of discretion in the orphans' court finding Ruzbacki in contempt. *See Habjan*, 73 A.3d at 637.

Finally, Ruzbacki's bald claims of bias on the part of the orphans' court judge do not afford him any relief. Ruzbacki fails to cite to the record to establish he sought recusal of the judge. *See Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017) ("[A] party must seek recusal of a jurist at the earliest

possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived."). Further, he fails to explain, through any pertinent analysis or citation to caselaw, how ruling against him demonstrated bias. ***See*** Pa.R.A.P. 2119(b) (stating that argument must cite to pertinent case law in support of the argument); ***see also Commonwealth v. McCauley***, 199 A.3d 947, 951 (Pa. Super. 2018) (stating that "simply because a judge rules against a [party] does not establish any bias on the part of the judge against that [party]") (citation omitted). Thus, this claim is waived.

Finally, with regard to his ability to pay, trial courts are not required to consider a contemnor's ability to pay before imposing counsel fees in favor of the opposing party as a sanction. ***See Hopkins v. Byes***, 954 A.2d 654, 659 (Pa. Super. 2008) (noting there is no authority to support a finding that a party's failure to comply with an order "mandates a determination of the contemnor's ability to pay, prior to the imposition of a sanction in the form of attorney's fees"); ***Mrozek***, 780 A.2d at 674 (noting "an award of counsel fees is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent, it is coercive and compensatory, and not

punitive") (citation omitted).[4]  Thus, the trial court did not abuse its discretion

in finding Ruzbacki in contempt and directing him to pay $400 in attorneys'

_____

[4] Recently, our Supreme Court addressed the issue of whether a contemnor, after a finding of contempt, who argues that he is unable to pay a purge condition waived the claim for failing to proffer affirmative proof of his financial circumstances.  *See Bredbenner v. Hall*, __ A.3d __, 2026 WL 852526 (Pa. 2026) (Opinion Announcing Judgment of Court).  In *Bredbenner*, a child support contemnor claimed that he was unable to pay the purge condition to avoid incarceration.  *See id.* at **1, 3-4.  The trial court found appellant had willfully failed to pay his support obligation, ordered him to be incarcerated for one hundred days, and set a purge condition of $2,000.  *Id.* at *4.  The trial court further found that based on its experience with appellant, he had the present ability to pay the purge condition, concluding appellant was not credible, and noted his history of making payments in order to avoid imprisonment, his access to funds to support himself, and his failure to provide evidence that he was disabled.  *Id.* at *4.  This Court vacated and remanded for a hearing to determine whether the appellant had the ability to pay.  *Id.* at **4-5.  Ultimately, our Supreme Court, in a plurality decision, affirmed this Court.  *Id.* at *10.  The Court held that "in civil support contempt proceedings, a trial court must attach an attainable condition so that the obligor may purge himself of contempt.  The record must support the obligor's ability to meet that condition.  The burden is on the petitioning party to develop that record.  The record is inadequate if it merely contains the discredited testimony of the obligor."  *Id.* at *9 (footnote omitted).

We conclude *Bredbenner* is distinguishable.  First, Bredbenner is a plurality decision, which is not binding precedent.  *See MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209, 1223 (Pa. Super. 2015) ("While the ultimate order of a plurality opinion; *i.e.* an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality **certainly do not constitute binding authority**.") (emphasis in original).  Further, and in any event, *Bredbenner* is not applicable to this case, because the orphans' court did not impose the attorneys' fees as a purge condition to avoid incarceration.  *See Mrozek*, 780 A.2d at 674 ("Because an award of counsel fees is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent, it is coercive and compensatory, and not punitive."); *accord Thomas*, 194 A.3d at 226.  Notably, Ruzbacki could use his inability to pay as a defense if he was found to be in contempt and threatened with
*(Footnote Continued Next Page)*

fees to the Borough. **See Rhoades v. Pryce**, 874 A.2d 148, 151-52 (Pa. Super. 2005) (en banc) (sanctions for contempt appropriate where necessary to compensate contemnor's adversary for injuries resulting from contemnor's noncompliance with court order and to compel obedience therewith) **see also Garr v. Peters**, 773 A.2d 183, 189 (Pa. Super. 2001) ("A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment.").

## September 25, 2024 Order

Ruzbacki further asserts that the orphans' court erred in refusing to vacate the September 2024 sanctions without conducting a new evidentiary hearing. Ruzbacki's Brief at 14. According to Ruzbacki, he acted in good faith to protect his mother, noting his filings all raised concerns about fraud, elder abuse, and irregularities in T.R.'s guardianship. **Id.** at 15, 19-20; **see also** Ruzbacki's Reply Brief at 2-4 (arguing the denial of his fraud claims are unsupported by the record and his constitutional and statutory rights cannot be waived). He also contends the orphans' court deprived him access to courts in violation of his First Amendment right to petition the government for redress. **Id.** at 16, 18, 19, 20. Additionally, Ruzbacki takes issue with the revocation of his IFP status and the prohibition from any future filings as a

---

incarceration for failing to pay the attorneys' fees, but that is not the situation in this case. **See** Orphans' Court Order, 5/13/2025 ("Failure to abide by this *Order of Court* … will result in [] Ruzbacki being held in contempt of [c]ourt and assessed further fines and/or incarceration.") (emphasis in original).

restraint on his constitutionally protected activities. *Id.* at 18, 19, 20-21. He emphasizes that the orphans' court failed to review exculpatory evidence or make any independent factual findings. *Id.* at 16.

These claims do not implicate the May 13, 2025 sanctions order, but instead raise arguments related to the September 25, 2024 order. In that order, the orphans' court denied Ruzbacki's amended motion to open the guardianship proceedings with prejudice. Further, the orphans' court directed Ruzbacki to pay $3,300 to Saxonburg Borough, with $1,300 for counsel fees for the motion for sanctions and $2,000 for counsel fees for the contempt of court, rescinded his IFP status, and precluded him from filing any further pleadings relating to or arising out of this case without an order of the court.

The law is clear that an appeal may be taken as of right from any final order of a court. Pa.R.A.P. 341(a). A final order is an order that disposes of all claims and of all parties or is expressly defined as a final order by rule or statute. Pa.R.A.P. 341(b). The September 25, 2024 order denying Ruzbacki's amended motion to reopen and imposing sanctions in favor of the Borough and BCAAoA is an appealable final order, as it disposed of the petition to open the guardianship proceedings and Ruzbacki's fraud claims with prejudice, found Ruzbacki in contempt of a court order, and imposed sanctions. *See, e.g., Rhoades*, 874 A.2d at 153 (civil contempt orders imposing sanctions generally constitute final, appealable orders).

Thus, to raise claims concerning the September 2024 order, Ruzbacki was required to file an appeal within thirty days of entry of the September 25, 2024 order. *See* Pa.R.A.P. 903(a). ("[T]he notice of appeal ... shall be filed within 30 days after the entry of the order from which the appeal is taken."). Because he failed to do so, this Court lacks jurisdiction to review the merits of his claims pertaining to the September 2024 order. *See Young v. S.B. Conrad, Inc.*, 216 A.3d 267, 271 (Pa. Super. 2019) (noting that "an untimely appeal divests the Superior Court of jurisdiction.") (citation omitted).[5]

_____

[5] We note that the Borough and Ruzbacki have each filed additional applications before this Court. The Borough has filed an application for attorneys' fees pursuant to Pa.R.A.P. 2744, arguing that the instant appeal filed is frivolous, and that this Court previously cautioned Ruzbacki "to cease from filing frivolous applications and appeals." Application, 8/28/2025, at 1 (unnumbered). We deny this application, as Ruzbacki was entitled to appeal the imposition of sanctions.

Additionally, Ruzbacki filed two applications to strike, seeking to strike the allegedly improper and misleading portions of BCAAoA's brief and objecting to the appearance by Gallagher Law Group on behalf of the Borough because the Borough was not a party to the underlying orphans' court matter. Application to Strike, 9/2/2025, at 1-6; Application to Strike, 6/25/2025, at 1-3 (unnumbered). We deny both applications. Ruzbacki's own actions brought the Borough into this case, and he is appealing the sanctions imposed in favor of the Borough. Regarding the allegedly inflammatory statements, Ruzbacki filed a reply brief and had the opportunity to rebut any such statements.

Finally, Ruzbacki filed a "Notice of Supplemental Authority and Record Citation" in advance of oral argument. Notice, 1/11/2026, at 1-3. We deny this notice as moot, as the guardianship was not at issue in this appeal.

May 13, 2025 order affirmed. Application for Relief denied. Application to Strike (9/2/2025) denied. Application to Strike (6/25/2025) denied. Notice of Supplemental Authority denied as moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/15/2026