J-A28033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SERGEI KOVALEV | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFERSON HEALTH - NORTHEAST, | : | No. 2974 EDA 2023 |
| JEFFERSON HEALTH - NORTHEAST | : | |
| HEALTH, JEFFERSON FRANKFORD | : | |
| HOSPITAL, RYAN TAYLOR AND JULIA | : | |
| FINKEL | : | |

Appeal from the Order Entered November 16, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 220800839

BEFORE: PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 21, 2025**

Appellant Sergei Kovalev appeals *pro se* from trial court's order granting the motion filed by Appellees Jefferson Health - Northeast, Jefferson Health - Northeast Health, Jefferson Frankford Hospital, Ryan Taylor, D.O., and Julia Finkel, D.O. (collectively, "Appellees"), striking Appellant's certificates of merit,[1] and entering a judgment of *non pros* in favor of Appellees. On appeal,

_____

[1] *See* Pa.R.C.P. 1042.3(a) (requiring that in any action in which a plaintiff alleges that that a licensed professional deviated from an acceptable professional standard, the plaintiff must file a certificate of merit indicating that an appropriate licensed professional has supplied a written statement that there is a reasonable probability that the conduct at issue fell outside acceptable professional standards and was a cause in bringing about the plaintiff's harm or indicating that expert testimony of an appropriate licensed professional is not necessary to prosecute the plaintiff's claim).

Appellant argues that the trial court erred by sustaining Appellees' preliminary objections to several counts of Appellant's amended complaint, granting Appellees' motion to amend Appellant's civil cover sheet, striking Appellant's certificates of merit, and entering a judgment of *non pros*. We affirm.

On August 5, 2022, Appellant initiated this action by filing a complaint against Appellees. Appellant subsequently filed an amended complaint on October 28, 2022. Therein, Appellant alleged that he suffered a fall on August 5, 2020, resulting in serious injuries to, among other things, his head, spine, left shoulder, and both knees. *See* Am. Compl., 10/28/22, at 5-6, R.R. at 37a-38a.[2] On the following day, he went to the emergency department of Jefferson Frankford Hospital for treatment. *See* R.R. at 39a. Appellant asserted that Appellees refused or failed to provide treatment for Appellant's injuries. Specifically, Appellant alleged that Dr. Finkel examined Appellant for approximately five minutes and that Dr. Taylor only looked at Appellant for a few seconds in the examination room. *See id.* at 41a-43a. Appellant claimed that that Dr. Finkel and Dr. Taylor "failed to provide any appropriate medical screening examination, referral to qualified specialists, treatment, stabilization, [or] diagnosis" for Appellant's injuries. *Id.* at 43a-44a. Appellant further asserted that while X-rays were taken of one of his hands

---

[2] We may cite to the parties' reproduced record and supplemental reproduced record for the parties' convenience.

and one of his legs, both Dr. Finkel and Dr. Taylor denied his request for an MRI scan of his head to check for brain injuries. ***See id.*** at 43a-45a.

Appellant further alleged that Jefferson Health - Northeast, Jefferson Health - Northeast Health, and Jefferson Frankford Hospital (collectively, "Hospital Appellees") failed to exercise reasonable care in the management of the emergency department and in the hiring, supervision, and training of staff at Jefferson Frankford Hospital. ***See id.*** at 41a-42a, 51a-53a, 72a, 74a.

Appellant pled a total of nineteen counts in his amended complaint: (I) ordinary negligence; (II) medical malpractice (in the alternative to Count I)[3]; (III) gross negligence; (IV) negligence *per se*; (V) negligent infliction of emotional distress; (VI) reckless endangerment; (VII) assault and battery (intentional denial of medically necessary services); (VIII) violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL);[4] (IX) civil conspiracy (to deny medical services, to injure, and to defraud); (X) violation of the Emergency Medical Treatment and Active Labor Act (EMTALA);[5] (XI) violation of civil rights pursuant to 42 U.S.C. § 1983; (XII) 42 U.S.C. § 1983 violation of First Amendment rights pursuant to 42 U.S.C. § 1983; (XIII) violation of right to equal protection pursuant to 42 U.S.C. § 1983; (XIV)

_____

[3] Only as to Dr. Taylor and Dr. Finkel.

[4] 73 P.S. §§ 201-1 to 201-10.

[5] 42 U.S.C. § 1395dd.

failure to train, discipline, and supervise pursuant to 42 U.S.C. § 1983;[6] (XV) discrimination in violation of 42 U.S.C. § 2000a(a) *et seq.*; (XVI) conspiracy in violation of 42 U.S.C. § 1985; (XVII) breach of contract for health care; (XVIII) fraud and fraudulent misrepresentation; and (XIX) breach of fiduciary duty. **See** R.R. at 50a-127a. Appellant filed certificates of merit with respect to each Appellee on November 10, 2022. **See** R.R. at 247a-51a. Therein, Appellant certified that expert testimony from an appropriate licensed professional was not necessary because Appellant was relying on the doctrine of *res ipsa loquitur* and because Appellant was asserting claims of intentional torts and fraud against Dr. Taylor and Dr. Finkel. **See id.**

On September 9, 2022, Appellees filed a motion to amend Appellant's civil cover sheet, arguing that although Appellant had designated this action as "personal injury — other" when he filed his initial complaint and that, based on the allegations in the complaint, this matter should be designated as a medical professional liability action. **See** Appellees' Mot. to Amend, 9/9/22, at 2-4. On March 27, 2023,[7] the Honorable Daniel J. Anders entered an order granting Appellees' motion to amend. **See** Trial Ct. Order, 3/27/23.

_____

[6] Only as to Hospital Appellees.

[7] The trial court's order is dated March 23, 2023, but was docketed and served on the parties on March 27, 2023. **See** Pa.R.A.P. 108(a)(1) (providing that the date of entry of an order is the day the clerk of court mails or delivers copies of the order to the parties); **see also** Pa.R.C.P. 236.

Appellees also filed preliminary objections to Appellant's amended complaint on November 17, 2022 seeking to strike multiple counts for legal insufficiency (demurrer). *See* S.R.R. at 100b-251b. On December 22, 2022,[8] the Honorable Michael Erdos entered an order sustaining Appellees' preliminary objections in part and overruling Appellees' preliminary objections in part. Specifically, Judge Erdos ordered that the following counts were stricken from Appellant's amended complaint: (VI) reckless endangerment; (VII) assault and battery; (VIII) violation of the UTPCPL; (X) violation of the EMTALA; (XI) violation of civil rights; (XII) violation of civil rights; and (XIII) violation of civil rights. *See* Trial Ct. Order, 12/21/22, at 1-2. Judge Erdos also struck Appellant's claim for negligence *per se* pursuant to the UTPCPL, the EMTALA, 42 U.S.C. §§ 1983, 1985, 2000a(a), but allowed the Appellant's claim for negligence *per se* with respect to reckless endangerment to proceed. *See id.* at 2. Lastly, Judge Erdos overruled Appellees' other preliminary objections. *See id.* at 1-2.

Appellees filed a motion to strike Appellant's certificates of merit on October 14, 2022. *See* S.R.R. at 1b-80b. On April 17, 2023,[9] the Honorable Linda Carpenter entered an order granting Appellees' motion, striking Appellant's certificates of merit, and directing Appellant to file certificates of

_____

[8] The trial court's order is dated December 21, 2022, but was served on the parties on December 22, 2022. *See* Pa.R.A.P. 108(b); Pa.R.C.P. 236(b).

[9] The trial court's order is dated April 11, 2023, but served on the parties on April 17, 2023. *See* Pa.R.A.P. 108(b); Pa.R.C.P. 236(b).

merit as to each defendant that complied with the Pennsylvania Rules of Civil Procedure. *See* Trial Ct. Order, 4/17/23. Appellant filed amended certificates of merit as to each Appellee on April 21, 2023. *See* R.R. at 400a-05a. In these amended certificates of merit, Appellant again certified that expert testimony from an appropriate licensed professional was not necessary because Appellant was relying on the doctrine of *res ipsa loquitur* against Appellees and because Appellant was asserting claims of intentional torts against Dr. Taylor and Dr. Finkel. *See id.*

On May 4, 2023, Appellees filed a motion to strike Appellant's amended certificates of merit as deficient and a notice of intention to enter judgment of *non pros* for failure to file a written statement from an appropriate licensed professional. *See* S.R.R. at 279b-303b. On November 16, 2023,[10] Judge Carpenter entered an order and opinion granting Appellees' motion, striking Appellant's amended certificates of merit with prejudice, and entering a judgment of *non pros* against Appellant.

Appellant did not file a petition to strike or open the judgment of *non pros*. Appellant filed four timely notices of appeal, which included the November 16, 2023 order striking Appellant's amended certificates of merit and entering the judgment of *non pros*, the April 17, 2023 order striking

_____

[10] The trial court's order is dated November 13, 2023, but was docketed on November 14, 2023, and served on the parties on November 16, 2023. We have amended the caption accordingly *See* Pa.R.A.P. 108(b); Pa.R.C.P. 236(b).

Appellant's original certificates of merit, the March 27, 2023 order amending Appellant's civil cover sheet and directing Appellant to produce certificates of merit, and the December 22, 2022 order sustaining in part, and overruling in part, Appellees' preliminary objections.

Appellant complied with Pa.R.A.P. 1925(b). Judge Erdos issued a Rule 1925(a) opinion addressing the order sustaining in part and overruling in part Appellees' preliminary objections. *See* Judge Erdos' Op., 3/11/24, at 1-8. Judge Anders issued a Rule 1925(a) opinion addressing the order amending Appellant's civil cover sheet and directing Appellant to produce certificates of merit. *See* Judge Anders' Op., 3/18/24, at 1-3. Judge Carpenter issued a Rule 1925(a) opinion addressing the order striking Appellant's certificates of merit with prejudice and the judgment of *non pros*. *See* Judge Carpenter's Op., 3/15/24, at 1-7 (unpaginated).

This Court docketed Appellant's appeals at 2974 EDA 2023, 3099 EDA 2023, 3098 EDA 2023, and 3082 EDA 2023, respectively. On April 8, 2024, this Court *sua sponte* dismissed the appeals at 3099 EDA 2023, 3098 EDA 2023, and 3082 EDA 2023 as duplicative.

Appellant raises the following issues on appeal, which we restate as follows:

1. The trial court erred by sustaining Appellees' preliminary objections.

2. The trial court erred by designating this matter as a medical professional liability action.

3. The trial court erred by striking Appellant's certificates of merit.

Appellant's Brief at 8-9.[11]

## Preliminary Objections

First, Appellant argues that the trial court abused its discretion by entering the December 22, 2022 order, which sustained in part and overruled in part Appellees' preliminary objections and struck the following counts from Appellant's amended complaint: (VI) reckless endangerment; (VII) assault and battery; (VIII) violation of the UTPCPL; (X) violation of the EMTALA; (XI) violation of civil rights; (XII) violation of civil rights; and (XIII) violation of civil rights. *Id.* at 60-70.

This Court has explained:

We review an order sustaining preliminary objections seeking dismissal of an action *de novo*:

Our standard of review of an order of the trial court [ruling on] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering

---

[11] We note that here, Appellant raised seven questions in his statement of questions presented, but he has divided the argument section of his brief into four sections, several with numerous subsections. The Pennsylvania Rules of Appellate Procedure require that the argument section of the brief "shall be divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). Failure to do so may result in waiver. *See Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1042 (Pa. Super. 2015). While we do not condone Appellant's failure to comply with the Rules of Appellate Procedure, we find that the defects in Appellant's brief does not impede our ability to render meaningful appellate review; therefore, we decline to find waiver on this basis. *Id.*

> preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.
>
> *Fiedler v. Spencer*, 231 A.3d 831, 835-36 (Pa. Super. 2020) (citations omitted). This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion.

*Godlove v. Humes*, 303 A.3d 477, 480-81 (Pa. Super. 2023).

Following our review of the record, the parties' briefs, the relevant law, and the trial court's well-reasoned analysis, we affirm on the basis of Judge Erdos' opinion. *See* Judge Erdos' Op., 3/11/24, at 1-8.[12] Specifically, we agree with Judge Erdos that the various statutes Appellant has cited in his amended complaint do not provide a cause of action against medical providers, cannot be used to assert a challenge to the quality of medical care, or otherwise do not apply to Appellees. *See Godlove*, 303 A.3d at 480-81. We also agree that Appellant has failed to state a claim for assault and battery because Appellant has not alleged that Appellees committed any physical

_____

[12] We note that Judge Erdos' opinion contains a relevant typographical error. On page 7 of the opinion, the quote should read "EMTALA requires hospitals to provide medical screening and stabilizing treatment to individuals seeking **emergency** care in a nondiscriminatory manner." *See* Judge Erdos' Op., 3/11/24, at 7 (quoting *Toretti v. Main Line Hosps. Inc.*, 580 F.3d 168, 173 (3d Cir. 2009)).

contact against his person. Therefore, Appellant is not entitled to relief on this claim.

**Designating this Matter as a Medical Professional Liability Action**

Next, Appellant argues that the trial court abused its discretion by entering the March 27, 2023 order, which granted Appellees' motion to amend the civil cover sheet to designate this matter as a medical professional liability action. Appellant's Brief at 37-39.[13] Appellant claims that his designation of his civil action as "other personal injury" was correct because he pled nineteen causes of action in his amended complaint, which included causes of action for intentional torts and civil rights violations. *Id.* at 38-39. Appellant claims that because a plaintiff is the master of his own complaint, Appellees, as the defendants, cannot dictate how Appellant manages his case. *Id.* at 39 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). Appellant further argues that the trial court's March 27, 2023 order violates Pa.R.C.P. 128 because designating this matter a medical professional liability action is "contrary to

---

[13] We note that Appellant has cited his response in opposition to Appellees' motion to amend civil cover sheet. *See* Appellant's Brief at 38 (citing R.R. at 139-69a). To the extent that Appellant attempts to incorporate by reference the arguments he presented in his trial court filings, "our appellate rules do not allow incorporation by reference of arguments contained in briefs filed with other tribunals, or briefs attached as appendices, as a substitute for the proper presentation of arguments in the body of the appellate brief." *Commonwealth v. Briggs*, 12 A.3d 291, 343 (Pa. 2011). Our Supreme Court has held that when an appellant attempts to present issues by incorporating by reference another document into his brief, those issues are waived. *Id.* Therefore, we limit our analysis to arguments developed in Appellant's appellate briefs.

the entire substance of [Appellant's] amended complaint." ***Id.*** at 35 (some formatting altered); ***see also id.*** at 50 (Appellant contends that his claims cannot be "classified as a medical malpractice because the required second prong ('medical treatment') was missing" (emphasis omitted)).

Lastly, Appellant argues that although Count II of his amended complaint is captioned as "medical malpractice," he only included it "to satisfy [Appellees'] *alter ego* [sic][,]" and that he "intentionally created [Count II] to satisfy [Appellees'] desire to dismiss something." ***Id.*** at 44. Appellant further contends that his amended complaint does not allege that Appellees engaged in an unskilled performance of any medical procedure. ***Id.*** at 45-47.

To the extent that this Court must review the averments of Appellant's complaint to determine the theories of liability that he is asserting, that issue presents a question of law. ***See Ditch v. Waynesboro Hosp.***, 917 A.2d 317, 321 (Pa. Super. 2007). Therefore, our standard of review is *de novo* and our scope of review is plenary. ***See id.***; ***see also Gray v. Buonopane***, 53 A.3d 829, 834 (Pa. Super. 2012) (explaining that interpretation of the Pennsylvania Rules of Civil Procedure presents a question of law, and this Court reviews such questions *de novo*).

Pennsylvania Rule of Civil Procedure 205.5 provides, in relevant part, as follows: "[a]t the commencement of any action, the party initiating the action shall complete the cover sheet set forth in subdivision (e) and file it with the prothonotary." Pa.R.C.P. 205.5(a)(2).

Our Supreme Court has rescinded Rule of Civil Procedure 128 and replaced it with Rule of Judicial Administration 109 effective January 1, 2024. *See* Pa.R.J.A. 109; Pa.R.C.P. 126(b). Rule of Judicial Administration 109 states:

> Ascertaining the Supreme Court's intention in the adoption or amendment of a rule may be guided by the following presumptions among others:
>
> > (a) The Supreme Court does not intend a result that is absurd, impossible of execution, or unreasonable;
> >
> > (b) The Supreme Court intends a rule to be construed to secure the just, speedy, and inexpensive determination of every action or proceeding to which it is applicable;
> >
> > (c) The Supreme Court intends the entire rule or chapter of rules to be effective and certain;
> >
> > (d) The Supreme Court does not intend to violate the Constitution of the United States or of this Commonwealth[.]

Pa.R.J.A. 109(a)-(d).

> This Court has explained:
>
> Medical malpractice is defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services. . . . [T]he basic elements of medical malpractice and ordinary negligence are the same, although medical malpractice has some distinguishing characteristics. Th[is] Court drew the distinction between ordinary negligence and medical malpractice as follows:
>
> > A medical malpractice claim is distinguished by two defining characteristics. First, medical malpractice can occur only within the course of a professional relationship. Second, claims of medical malpractice necessarily raise questions involving medical judgment. Claims of ordinary negligence, by contrast, raise issues that are within the common knowledge and experience of the [fact-finder]. Therefore,

- 12 -

> a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions.
>
> Therefore, where a complaint is predicated upon facts constituting medical treatment, that is, when it involves diagnosis, care and treatment by licensed professionals, the action must be characterized as a professional negligence action.

*Ditch*, 917 A.2d at 321-22 (citations omitted and some formatting altered).

Further, it is well-established that medical malpractice encompasses claims that physicians failed to properly diagnose a patient's condition. *See, e.g.*, *Nicolaou v. Martin* 195 A.3d 880, 882-85 (Pa. 2018) (the plaintiff brought a medical malpractice action alleging that the defendants had failed to properly diagnose and treat the plaintiff's Lyme disease where the defendants had misdiagnosed the plaintiff's symptoms as the result of multiple sclerosis); *Zieber v. Bogert*, 773 A.2d 758, 759-60 (Pa. 2001) (in a medical malpractice action, the plaintiff alleged that the defendants failed to order a C-T scan which would have revealed that the plaintiff had lymphoma in his abdomen).

Our Supreme Court has held that "[a] cause of action for corporate negligence arises from the policies, actions[,] or inaction of the institution itself rather than the specific acts of individual hospital employees. Thus, under this theory, a corporation is held directly liable, as opposed to

- 13 -

vicariously liable, for its own negligent acts." ***Welsh v. Bulger***, 698 A.2d 581, 585 (Pa. 1997) (citations omitted and formatting altered); ***see also Bisher v. Lehigh Valley Health Network, Inc.***, 265 A.3d 383, 415 n.18 (Pa. 2021) (noting that a claim that a hospital did not have proper protocols in place "implicates the type of systemic negligence that is the hallmark of a corporate negligence claim"). Additionally, "unless a hospital's negligence is obvious, a plaintiff must produce expert testimony to establish that the hospital deviated from an accepted standard of care and that the deviation was a substantial factor in causing the harm to the plaintiff." ***Welsh***, 698 A.2d at 585.

This Court has explained that

> [we] refused to excuse a plaintiff from filing a certificate of merit merely because the plaintiff "fails to **expressly** indicate in its complaint that it is asserting a professional liability claim, . . . when, in substance, the plaintiff is actually asserting a professional liability claim." ***Varner v. Classic Communities Corp.***, 890 A.2d 1068, 1074 (Pa. Super. 2006) (emphasis in original). "[I]t is the substance of the complaint rather than its form which controls whether the claim against a professionally licensed defendant sounds in . . . professional malpractice." ***Id.*** . . . . To ascertain the plaintiff's theory of liability, courts must examine the averments in the complaint.

***Sabella v. Estate of Milides***, 992 A.2d 180, 187 (Pa. Super. 2010) (some citations omitted and some formatting altered); ***see also Ditch***, 917 A.2d 321-22 (explaining that "[i]n order to determine what theory of liability [the plaintiff] is asserting, this Court must examine the averments [the plaintiff] makes in [the amended] complaint[,]" and concluding that, after viewing

- 14 -

allegations of the amended complaint as a whole, the plaintiff raised a professional liability claim (citations omitted)).

In his Rule 1925(a) opinion, Judge Anders explained:

Here, the trial court properly granted [Appellees'] motion to amend and found [Appellant's] amended complaint raised medical malpractice negligence claims because (1) [Appellant's] claims occurred within the course of his relationship with medical professionals, Dr. Ryan Taylor, D.O. and Dr. Julia Finkel, D.O. while in the emergency room and (2) the claims raise questions of medical judgment beyond the realm of common knowledge and experience such as whether [Appellant's] injuries required MRI or a referral to a neurology or neurosurgery specialist. Thus, the court properly found [Appellant's] amended complaint raised medical malpractice negligence claims.

Judge Anders' Op., 3/18/24, at 2-3.

Based on our review of the record, we agree with Judge Anders' conclusions and discern no error of law. *See Ditch*, 917 A.2d at 321; *see also Gray*, 53 A.3d at 834.

As stated above, this Court reviews the allegations in Appellant's amended complaint as a whole to determine the theory of liability he has raised and it is the substance of the complaint, not the form that controls our determination. *See Ditch*, 917 A.2d at 321-22; *See also Sabella*, 992 A.2d at 187. Here, Appellant alleged in his amended complaint that Dr. Finkel and Dr. Taylor "failed to provide any appropriate medical screening examination, referral to qualified specialists, treatment, stabilization, [or] diagnosis" for Appellant's injuries and denied Appellant's request for an MRI scan of his head to check for brain injuries. R.R. at 43a-45a. Appellant further asserted that

"[n]ot a single educational manual ever provided that an emergency room treatment and examination of severely injured patients with visible face and head injuries, and with multiple injuries to other body parts can be accomplished by spending 1-2 minutes on asking several basic questions without examining anything." *Id.* at 42a-43a. Appellant also alleged that Hospital Appellees failed to exercise reasonable care in the management of the emergency department and in the hiring, supervision, and training of their staff. *See id.* at 41a-42a, 51a-53a, 72a, 74a. Lastly, Appellant contended that "[e]ven a person without any form of education would realize that it is not the correct treatment, examination, or diagnostic procedure that can be used in any emergency department operating at present modern time." *Id.* at 43a (some formatting altered).

It is clear from the allegations in the amended complaint that Appellant's claims pertain to actions and omissions which occurred within the course of a professional relationship, *i.e.*, doctor and patient. *See Ditch*, 917 A.2d at 321-22. Further, although Appellant characterizes his claim as arising from Appellees' alleged failure to treat Appellant, such a claim sounds in medical malpractice. *See, e.g., Nicolaou*, 195 A.3d at 882-85; *Zieber*, 773 A.2d at 759-60. Notwithstanding Appellant's assertion that a layperson could recognize that Appellees failed to utilize the correct diagnostic procedure and provide him with the proper treatment, we agree with Judge Anders that Appellant's claim raises questions of medical judgment beyond the realm of common knowledge and experience. *See Ditch*, 917 A.2d at 321-22; *see*

*also Sabella*, 992 A.2d at 187. For these reasons, we conclude that the allegations in Appellant's complaint raise a claim of medical malpractice. *See Ditch*, 917 A.2d at 321-22.

Lastly, Appellant's reliance on *Caterpillar* and *The Fair* is misplaced. In both of those cases, the Supreme Court of the United States explained that a plaintiff may choose whether or not to include a claim under federal law in his or her complaint and that, in the absence of diversity of citizenship, federal courts may only exercise jurisdiction over a matter if the complaint presents a federal question. *See Caterpillar*, 482 U.S. at 392; *The Fair*, 228 U.S. at 25. Neither case stands for the proposition that a court cannot treat a claim for ordinary negligence and/or an intentional tort as a claim for medical malpractice where the allegations of the complaint have all of hallmarks of medical malpractice. *See Ditch*, 917 A.2d at 321-22 (explaining that it is the substance, not the form of the complaint that controls).

For these reasons, we discern no error of law in Judge Anders' order designating this matter as a medical malpractice action. *See Ditch*, 917 A.2d at 321; *see also Gray*, 53 A.3d at 834. Accordingly, Appellant is not entitled to relief on this claim.[14]

_____

[14] We further note that Rule of Civil Procedure 1023.1 provides that the signature of an attorney or *pro se* party constitutes a certification that the signer, to the best of that person's knowledge, information and belief, is not presenting a pleading, motion or other paper "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]" Pa.R.C.P. 1023.1(c)(1). A trial court may subject a party to
*(Footnote Continued Next Page)*

**Striking Appellant's Certificates of Merit**

In his remaining claim, Appellant argues that the trial court abused its discretion by entering the April 17, 2023 and November 16, 2023 orders, which granted Appellees' motions to strike his certificates of liability and dismissed this action. Appellant's Brief at 36-58.

Before addressing the merits of Appellant's issues, we must determine whether he has preserved them for appeal. This Court may raise the issue of waiver *sua sponte*. **See Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa. Super. 2007). "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020) (citation omitted).

Rule of Civil Procedure 3051 provides that a party must seek relief from a judgment of *non pros* by filing a petition to open or strike the judgment. **See** Pa.R.C.P. 3051(a) (stating that "[r]elief from a judgment of *non pros* shall be sought by petition" (some formatting altered)).

This Court has stated that "Rule 3051, however, mandates that the plaintiff file a petition to open before appealing, even when the trial court held

---

sanctions for violations of Rule 1023.1(c). **See** Pa.R.C.P. 1023.1(d). As stated above, Appellant asserts that he only included Count II of the amended complaint with the intention of it being dismissed as part of his litigation strategy. **See** Appellant's Brief at 44. Although the trial court did not impose sanctions upon Appellant, we strongly condemn Appellant's inclusion of a count in his amended complaint for the express purpose of being stricken upon a motion by Appellees because that causes unnecessary delay and/or needless increase in the cost of litigation.

a hearing before entering judgment of *non pros*." ***Cardona v. Buchanan***, 230 A.3d 476, 478 (Pa. Super. 2020). Further, the ***Cardona*** Court explained that because "petitions to open judgments of *non pros* are mandatory, any appeal related to a judgment of *non pros* lies not from the judgment itself, but from the denial of a petition to open or strike." ***Id.*** at 479 (citations omitted and formatting altered).

Our Supreme Court has held that the failure to file a petition to open a judgment of *non pros* as required by Rule 3051 waives all claims related to entry of the judgment of *non pros*. ***See Sahutsky v. H.H. Knoebel Sons***, 782 A.2d 996, 1001 (Pa. 2001); ***see also id.*** at 1001 n.3 (noting that quashal is not appropriate when a party appeals from a judgment of *non pros* without filing a Rule 3051 petition to open and reiterating that "the proper consequence of the failure to file a Rule 3051 petition is a waiver of the substantive claims that would be raised"); ***Cardona***, 230 A.3d at 480 (holding that the plaintiff waived her sole issue on appeal because the plaintiff failed to file a petition to open the judgment of *non pros* before filing a notice of appeal).

Here, the trial court entered a judgment of *non pros* after granting Appellees' motion to strike Appellant's amended certificates of merit. Appellant did not file a petition to open the judgment of *non pros* prior to filing his notices of appeal. Therefore, Appellant has waived his issues related to the April 17, 2023 order striking his certificates of merit and the November 16, 2023 order striking Appellant's amended certificates of merit and entering

the judgment of *non pros.*[15]  *See Sahutsky*, 782 A.2d 1001 & n.3; *Cardona*, 230 A.3d at 480.

For these reasons, we conclude that Appellant is not entitled to relief and accordingly, we affirm.[16]

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/21/2025

---

[15] Even if Appellant's issues were not waived, we would affirm on the basis of Judge Carpenter's Rule 1925(a) opinion.  *See* Judge Carpenter's Op., 3/15/24, at 4-7 (unpaginated).

[16] The parties are directed to attach a copy of Judge Erdos' opinion and Judge Carpenter's opinion in the event of further proceedings.

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

### CIVIL TRIAL DIVISION

OPFLD-Kovalev Vs Jefferson Health - Northeast Etal

22080083900143

Sergei Kovalev

v.

Jefferson Health - Northeast, Jefferson Health-,
Northeast Health, Jefferson Frankford Hospital,
Ryan Taylor, and Julia Finkel

Case ID: 220800839

No. 3082 EDA 2023

## OPINION

**ERDOS, J.**                                                **March 11, 2024**

This appeal arises from a medical malpractice case wherein Appellant Sergei Kovalev alleges inadequate medical care at Jefferson Frankford Hospital (along with the doctors, Appellees) following a fall in the downtown area of Philadelphia. This opinion addresses Appellant's appeal of the Court's December 21, 2022 Order Sustaining in Part and Overruling in Part Appellees' Preliminary Objections to the Amended Complaint.

## PROCEDURAL POSTURE

Appellant filed his Complaint pro se in August of 2022, alleging Appellees failed to give him medical care when he went to the emergency room after a fall in August of 2020. He filed an Amended Complaint on August 28, 2022. Appellees filed Preliminary Objections to his Amended Complaint on November 17, 2022. The Court ruled on the motion on December 21, 2022, sustaining nine objections and overruling eleven. On November 13, 2023, a final

1

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b) D. KELLY 03/11/2024

disposition was entered against the Appellant for failure to produce Certificates of Merit. Appellant filed an appeal of this Court's order regarding preliminary objections.

## ISSUES

Appellant appeals the Court's order sustaining nine of Appellees' objections to his Amended Complaint, striking the following causes of action and types of relief requested: Reckless Endangerment; Assault and Battery; UTPCPL; Request for Attorney Fees; Request for Injunctive Relief; Civil Rights, First Amendment, and Discrimination Claims under 42 U.S.C. § 1983; EMTALA; and Negligence Per Se.

## DISCUSSION

The Pennsylvania Rules of Civil Procedure permit filing preliminary objections to a Complaint to strike impertinent matters and for failure of a pleading to conform to a rule of law. Pa.R.Civ.P. 1028(a)(2). Averments in a complaint are impertinent where they are "irrelevant to material issues made or tendered, and which, whether proven or not, or whether admitted or not, can have no influence in leading to the result of a judicial decree." South v. Murphy, 21 Pa.D.&C.4th 183, 186-87 (C.P. Cumberland 1993) (citing 2 Anderson, Pennsylvania Civil Practice § 1017:103, at 480 (1976)).

## I.  RECKLESS ENDANGERMENT

Count VI of Appellant's Amended Complaint is titled "Reckless Endangerment - Civil Claim." Appellant claims that a violation of a criminal statute can be brought as a civil tort. Reckless Endangerment is defined in the criminal code as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. Contrary to Appellant's assertion, reckless endangerment is not a recognized civil cause of action.

2

## II. ASSAULT AND BATTERY

Count VII of Appellant's Amended Complaint is titled "Assault and Battery - Civil Claims for Intentional Denial of Medically Necessary Services." Appellant's Amended Complaint alleges that Appellees' denial of medical services worsened his injuries and thus constitutes assault and battery.

"Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (citing Cohen v. Lit Brothers, 70 A.2d 419, 421 (Pa. 1950)). Appellant did not allege any attempt of force or threat of physical contact. In fact, his complaint posits the opposite, namely, that Appellees withheld contact in the form of treatment. While such conduct or lack of conduct may warrant other causes of action, assault and battery are not amongst them.

## III. UTPCPL

Count VIII of Appellant's Amended Complaint raises a cause of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL). The UTPCPL does not, and was not intended to, apply to providers of medical services. Walter v. Magee-Womens Hosp. of UPMC Health Sys., 876 A.2d 400, 407 (Pa. Super. 2005), aff'd, 906 A.2d 1194 (2006); Gatten v. Merzi, 579 A.2d 974, 976 (Pa. Super. 1990). Even if it did, the false advertisement alleged by Appellant—that Jefferson Hospital's website claims it "provides leading-edge care"—is an opinion that cannot be objectively proven true or false.

## IV. ATTORNEY FEES

Appellant asks for attorney fees in his ad damnum clauses and prayer for relief section. Because Appellant was pro se, and because it is "well-settled that a pro se litigant cannot recover

3

attorney[ ] fees for the work expended in litigating his or her own case," the Court sustained the preliminary objection. McFalls v. Municipality of Norristown, 280 A.3d 345 (Pa.Cmwlth. 2022) (citing Westmoreland Cnty. v. Allegheny Cnty., 723 A.2d 1084, 1086-87 (Pa. Cmwlth. 1999)).

## V.  INJUNCTIVE RELIEF

Appellant asks for injunctive relief in his ad damnum clauses and prayer for relief section. In order to receive injunctive relief, "a party must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested." Harding v. Stickman, 823 A.2d 1110, 1111 (Pa. Cmwlth. 2003).

Appellant states that without injunctive relief, "all Defendants will continue their reckless and unlawful activities" and "Plaintiff and other members of the public will remain at unreasonable and serious safety and health risks." Amend. Compl. Kovalev v. Jefferson Health – Northeast, et al., August Term 2022 No. 839, at 77. However, the conduct Appellant accuses Appellees of has already been completed. He has long left the hospital, and any damages he may have suffered from Appellees' actions or inaction can be recovered through his negligence cause of action. In addition, injunctive relief "is not available to eliminate a remote possible future injury or invasion of rights." Buehl v. Beard, 54 A.3d 412, 420 (Pa. Cmwlth. 2012) (citing Jamal v. Dept. of Corrections, 549 A.2d 1369, 1371 (Pa. Cmwlth. 1988)).

## VI.  CIVIL RIGHTS AND DISCRIMINATION CLAIMS UNDER 42 U.S.C. § 1983

In Counts XI, XIII, and XIV, Appellant's Amended Complaint alleges violations of his civil rights under 42 U.S.C. § 1983. Section 1983 reads: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State [...], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

4

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[...]." 42 U.S.C. § 1983.

To bring a 1983 action, two essential elements are required: 1) the conduct complained of was committed by a person acting under color of state law, and 2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution and laws of the United States. Palmer v. Bartosh, 959 A.2d 508, 514 (Pa. Cmwlth. 2008). Furthermore the "plaintiff pursuing a cause of action under Section 1983 must plead the facts that give rise to the claimed deprivation of civil liberties and specifically avoid vague and conclusory allegations." Id.

Although Jefferson Hospital is a private nonprofit, it is true that private entities may sometimes be acting under color of state law for the purposes of § 1983. The test is whether there is a sufficiently "close nexus" between the State and the private entity, such that the private entity may be fairly treated as the State itself. Hennessy v. Santiago, 708 A.2d 1269, 1276 (Pa. Super. Ct. 1998); Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974). In addition, the State must be responsible for the specific conduct complained of. Kach v. Hose, 589 F.3d 626, 648 (3d Cir. 2009).

Appellant asserts in his Amended Complaint that such a nexus exists because Appellees receive state and federal tax exemptions, state and federal funds, are exhaustively regulated by the state, and they are "expressed through the public interest." Amend. Compl. at 318. Appellant cites to Simkins v. Moses H. Cone Mem'l Hosp. as the landmark case finding private hospitals to be state actors for the purpose of § 1983 actions when they receive government funding and are subject to extensive regulation. 323 F.2d 959 (4th Cir. 1963). However, the Fourth Circuit overturned their holding twenty years later in Modaber v. Culpeper Mem'l Hosp., Inc., 674 F.2d

5

1023 (4th Cir. 1982). Furthermore, the Third Circuit has found that regulations and funding do not automatically transform a private actor to a state actor. See, e.g., Hodge v. Paoli Mem'l Hosp., 576 F.2d 563, 564 (3d Cir. 1978) (the receipt of Hill-Burton construction funding, Medicare and Medicaid funds, and the existence of a tax exemption, as well as state licensing requirements for nonprofit hospitals, do not constitute state action under § 1983).

Appellant was admitted to the Emergency Room, and alleges his treatment was inadequate. He does not link any state regulation or funding to his specific treatment or alleged discrimination. Thus, there was insufficient evidence that Appellees were acting under color of state law.

## VII.  FIRST AMENDMENT

Count XII of Appellant's Amended Complaint raises a cause of action against Appellees under the Civil Rights Act, alleging that his First Amendment right to freedom of expression was impinged. He alleges that he had the "expectation of the ability to talk about preferential method of treatment and diagnosis," and that as a result of Appellees violating his civil rights he "suffered injuries for his protected speech." Amend. Compl. at 344–45.

As addressed above, 42 U.S.C. § 1983 applies to abuses of power by state and local officials or other persons acting under color of state law. Appellees are not state actors, nor does Appellant allege any facts suggesting they were ever acting on behalf of the state or local government during his stay. Moreover, even if Appellees were somehow acting under color of state law, Appellant's freedom of expression was not violated. Appellant claims in his Amended Complaint that he asked for an MRI of his head. Amend. Compl. at 55. While he alleges Appellees ignored his request, ignoring speech is not the same as restricting speech.

## VIII. EMTALA

Count X of Appellant's Amended Complaint alleges that Appellees violated the Emergency Medical Treatment and Labor Act (EMTALA) by inflicting additional injuries on him. "EMTALA requires hospitals to provide medical screening and stabilizing treatment to individuals seeking medical care in a nondiscriminatory manner." Torretti v. Main Line Hosps., Inc., 580 F.3d 168, 173 (3d Cir. 2009); 42 U.S.C. § 1395dd. However, EMTALA "is not a malpractice statute" and "cannot be used to challenge the quality of medical care." Nartey v. Franciscan Health Hosp., 2 F.4th 1020, 1025 (7th Cir. 2021).

Appellant's Amended Complaint indicates that he was admitted into the Emergency Department, and that Appellees conducted x-rays on one hand and leg. Amend. Compl. at 49–52, 59. Whether Appellees conducted enough tests to properly diagnose Appellant, and whether they properly treated his injuries, are matters relevant to Appellant's malpractice claim, but not to an EMTALA claim.

## IX. NEGLIGENCE PER SE

Count IV of Appellant's Amended Complaint raises a cause of action against Appellees under negligence per se for the following statutes and regulations: 73 P.S. § 201-1, et seq. (UTPCPL), 42 U.S. Code § 1395dd (EMTALA), 42 U.S.C. § 1983, 42 U.S.C. § 2000a(a), et seq. (Discrimination in Public Accommodations), 42 U.S.C. § 1985 (Conspiracy to Interfere with Civil Rights), and 18 Pa. C.S. § 2705 (Reckless Endangerment). The Court struck all negligence per se claims except as it pertains to Reckless Endangerment.

In order to prove a claim based on negligence per se, the following four requirements must be met:

7

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

Ramalingam v. Keller Williams Realty Grp., Inc., 121 A.3d 1034, 1042-43 (Pa. Super. 2015).

As discussed above, the UTPCPL does not apply to providers of medical services. Since the statute does not apply to Appellees, they could not have violated it. Nor could they have violated the EMTALA. Likewise, Appellees are not state actors, so 42 U.S.C. § 1983 does not apply. 42 U.S.C. § 2000a(a), et seq. and 42 U.S.C. § 1985 are both statutes that involve intentional acts and thus cannot form the foundation for negligence per se.

## CONCLUSION

For the foregoing reasons, the Court asks the Superior Court to affirm its order sustaining in part Appellees' Preliminary Objections.

BY THE COURT:

_____

**MICHAEL ERDOS, J.**

DATE: March 11, 2024

8

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENSYLVANIA**
**CIVIL TRIAL DIVISION**

| | | |
|---|---|---|
| **SERGEI KOVALEV** | : | **SUPERIOR COURT** |
| *Plaintiff-Appellant* | : | **2974 EDA 2023** |
| | : | **3099 EDA 2023** |
| **v.** | : | |
| | : | **COURT OF COMMON PLEAS** |
| **JEFFERSON HEALTH –** | : | **CASE NO. 220800839** |
| **NORTHEAST et al.** | : | |
| *Defendant-Appellee* | : | |

**OPINION**

CARPENTER, J.                                                                                  MARCH 15, 2024

Plaintiff Sergei Kovalev appeals this Court's April 11, 2023 and November 13, 2023

Orders granting Defendants' Motion to Strike Plaintiff's Certificate of Merit. For the reasons

that follow, this Court respectfully requests that the Superior Court affirm this Court's decision

in 2974 EDA 2023 (November 13, 2023 Order) and quash the appeal in 3099 EDA 2023 (April

11, 2023 Order) as untimely.

## PROCEDURAL HISTORY

On August 5, 2022, Plaintiff Sergei Kovalev commenced the instant action against

Defendants Jefferson Health – Northeast, Jefferson Health - Northeast System, Jefferson

Frankford Hospital, Ryan Taylor, DO, and Julia Finkel, DO asserting an extensive list of claims

stemming from his treatment at Jefferson Frankford Hospital. On October 28, 2022, in response

to preliminary objections, Plaintiff filed an Amended Complaint. On November 17, 2022,

OPFLD-Kovalev Vs Jefferson Health - Northeast Etal

22080083900148

Defendants filed Preliminary Objections, which were sustained in part and overruled in part by the Hon. Michael Erdos on December 21, 2022.[1]

The instant two appeals (and the appeal of the Hon. Daniel Anders' March 23, 2023 Order[2]) arise from the remaining portions of the record wherein the parties were in dispute over whether the matter required Certificates of Merit to be filed and whether the subsequently filed Certificates complied with the various provisions of Pa.R.C.P. 1042.

On September 7, 2022, Defendants filed a Notice of Intent to Enter Judgment of Non Pros for Failure to File a Certificate of Merit, pursuant to Pa.R.C.P. 1042.6. Relatedly, on September 9, 2022, Defendants filed a Motion to Amend the civil cover sheet to reflect that the matter was a medical professional liability claim and to require Plaintiff to produce Certificates of Merit. Plaintiff filed his opposition thereto on September 29, 2022. On March 23, 2023, Judge Anders entered an Order granting Defendants' Motion and ordering Plaintiff to produce the requisite Certificate of Merit against each defendant. On December 4, 2023, Plaintiff filed an untimely appeal of this Order, which is pending at 3098 EDA 2023.

On October 4, 2024, Plaintiff filed Certificates of Merit for each Defendant asserting that expert testimony of an appropriate licensed professional was unnecessary for prosecution of the claims. On October 14, 2022, Defendants filed a Motion to Strike Plaintiff's Certificates of Merit. Plaintiff filed his opposition thereto on November 3, 2022, Defendants filed their reply on November 11, 2022, and Plaintiff filed his surreply on November 22, 2022. On November 10, 2022, Plaintiff filed new Certificates of Merit for each Defendant, again asserting that expert

---

[1] The disposition of the Preliminary Objections has not been the subject of any appeal to date.
[2] On March 23, 2023, Judge Anders entered an Order granting Defendants' Motion to Amend the civil cover sheet to reflect that the matter was a medical professional liability claim and further ordering Plaintiff to produce the requisite Certificate of Merit against each defendant. This appeal is pending at 3098 EDA 2023.

testimony of an appropriate licensed professional was unnecessary for prosecution of the claims. On November 10, 2022, this Court scheduled a status hearing for January 26, 2023.

On January 26, 2023, this Court conducted a hearing and held the Motion to Strike under advisement to permit Plaintiff to supplement the record regarding the Certificates of Merit. On March 31, 2023, Defendants filed a supplemental memorandum in support of the Motion to Strike. Plaintiff made no further supplement. On April 11, 2023, this Court entered an Order granting the Motion to Strike Plaintiff's Certificates of Merit and further directing Plaintiff to produce, within ten (10) days, a Certificate of Merit for each Defendant in accordance with the Pennsylvania Rules of Civil Procedure. On April 24, 2023, Plaintiff filed a Motion for Reconsideration of this Court's April 11, 2023 Order, which this Court denied on May 25, 2023.

On April 21, 2023, Plaintiff filed Certificates of Merit for each Defendant, again asserting that expert testimony of an appropriate licensed professional was unnecessary for prosecution of the claims. On May 4, 2023, Defendants filed a Motion to Strike Plaintiff's Certificates of Merit. Plaintiff filed his opposition thereto on May 25, 2023, Defendants filed their reply on June 7, 2023, and Plaintiff filed his surreply on June 14, 2023. On November 13, 2023, this Court issued an Order, with Opinion, granting the Motion to Strike with prejudice and entering final judgment in favor of Defendants and against Plaintiff.

Relatedly, on May 4, 2023, Defendants filed a Notice of Intent to Enter Judgment of Non Pros for Failure to File a Certificate of Merit, pursuant to Pa.R.C.P. 1042.6. Plaintiff filed a Motion to Strike the Notice of Intent. Defendants filed their opposition thereto on June 7, 2023, and Plaintiff filed his reply on June 14, 2023. On July 25, 2023, this Court denied Plaintiff's Motion to Strike the Notice of Intent.

On November 16, 2023, Plaintiff timely filed a Notice of Appeal to the Superior Court from this Court's November 13, 2023 Order.

On December 2, 2023, Plaintiff *untimely* filed a Notice of Appeal to the Superior Court from this Court's April 11, 2023 Order.[3]

On December 7, 2023, Plaintiff was served an Order directing him to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On December 19, 2023, Plaintiff filed two statements of matters complained of on appeal asserting that:

1. [This] court erred and abused its discretion by classifying intentional torts as medical malpractice.

2. [This] court erred and abused its discretion by refusing to recognize the fact that Plaintiff timely, correctly and appropriately filed three times certificates of merit.

3. [This] court erred and/or abused its discretion by erroneously striking Plaintiff's correct and appropriate certificates of merit.

4. [This] court erred and/or abused its discretion by failing to apply the correct law to its decisions.

## DISCUSSION

Initially, this Court notes that the substance of Plaintiff's first issue raised on appeal – that the Court erred by classifying intentional torts as medical malpractice – is the crux of the appeal of Judge Anders' Order (3098 EDA 2023); however, to the extent that it relates to this Court's Orders striking Plaintiff's Certificates of Merit, this Court relies on its November 13, 2023 Opinion docketed with the November 13, 2023 Order, as the Opinion addresses the factual averments of the Complaint and why such certificates are required pursuant to Pa.R.C.P 1042.3.

---

[3] Additionally, on December 4, 2023, Plaintiff *untimely* filed a Notice of Appeal to the Superior Court from Judge Anders' March 23, 2023 Order.

Pursuant to Pa. R.C.P. 1042.3, a Plaintiff must file a Certificate of Merit to proceed with a claim of professional liability against a licensed professional. Our Supreme Court discussed the purpose behind and need for the adoption of such Rule in *Womer v. Hilliker*[4], specifically stating:

> We adopted these rules in January of 2003, having determined that malpractice actions were being commenced in the Pennsylvania courts more frequently. We were concerned that this trend would lead to an increase in the filing of malpractice claims of questionable merit, and sought to avoid the burdens that such claims impose upon litigants and the courts. Therefore, we exercised our rule-making authority to devise an orderly procedure that would serve to identify and weed non-meritorious malpractice claims from the judicial system efficiently and promptly.[5]

Accordingly, the Court set forth the language of the Rule in Subsection (a) as follows:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.[6]

While subsection (a)(3) permits the filing of a Certificate of Merit, under signature of the plaintiff or plaintiff's counsel, that avers that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim" the claims in the instant matter do not fall within the parameters of that subsection, as discussed below.

---

[4] 908 A.2d 269 (Pa. 2006).
[5] *Id.* at 275.
[6] Pa.R.C.P 1042.3(a).

Here, Plaintiff avers that his claims sound in intentional tort rather than professional negligence and, as such, the instant claims will not require a showing that a licensed professional deviated from an acceptable professional standard and, thus, not require expert testimony. This Court disagrees. In this Commonwealth, medical malpractice has long been characterized as the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services."[7] Our Superior Court has identified the two defining characteristics of a medical malpractice claim as, first, that "medical malpractice can occur only within the course of a professional relationship" and, second, that "claims of medical malpractice necessarily raise questions involving medical judgment."[8] While the elements of professional negligence parallel those of ordinary negligence, our jurisprudence requires that a plaintiff in a medical malpractice action "establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm."[9] The Supreme Court has clarified that "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony" to establish such elements.[10]

Plaintiff's instant claims arise out of the medical treatment he received after a fall on August 5, 2020. On August 6, 2020 he presented to Defendants for medical treatment through the emergency room. Apparently, Plaintiff believed he had injured his head and requested

---

[7] *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003).
[8] *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 322 (2007) (citing *Grossman v. Barke,* 868 A.2d 561, 570 (Pa.Super. 2005).
[9] *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003).
[10] *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003).

imaging of his head; however, the treaters are alleged to have only performed orthopedic studies. The averments in Plaintiff's pleadings are premised on Defendants' refusal to provide the requested medical care with numerous claims that the personnel were improperly trained students and didn't properly document the treatment in the emergency room.

Because the gravamen of Plaintiff's legal claims rest on his factual averments that Defendants should have provided him certain treatment, or been better trained, such claims sound entirely in professional negligence – not intentional tort – and demand that Plaintiff establish the requisite elements of a professional negligence action at trial. As such, it was incumbent upon Plaintiff to file proper Certificates of Merit *from a licensed professional* to satisfy Pa.R.C.P. 1042.3(a). Despite the ample opportunity provided by this Court to Plaintiff to file the appropriate certificate(s), Plaintiff continued to file deficient certificates (not signed by a *licensed professional*) asserting that this matter was one in which *res ipsa loquitor* applied or that his claims were premised on intentional infliction of emotional distress or other theories, not medical malpractice. Accordingly, Plaintiff failed to comply with the mandates of Rule 1042.3 and this Court necessarily granted Defendants' Motion to Strike the Certificates of Merit.

## CONCLUSION

For the reasons set forth in this Opinion, the Superior Court should affirm this Court's grant of the Motion to Strike Plaintiff's Certificate of Merit in 2974 EDA 2023 (November 13, 2023 Order) and quash the appeal in 3099 EDA 2023 (April 11, 2023 Order) as untimely.

BY THE COURT:

_____
CARPENTER, J.